Argued September 14, 1955, affirmed January 18, petition
for rehearing denied March 1, 1956

# STATE OF OREGON *v.* DEWEY
### P. 2d 799

*Leo Levenson,* Portland, argued the cause and filed a brief for Appellants.

*Robert M. Christ,* deputy district attorney for Multnomah County, Portland, argued the cause for Respondent. On the brief were John B. McCourt, district attorney for Multnomah County, Charles E. Raymond and James J. Kennedy, deputy district attorneys for Multnomah County, Portland.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK and LATOURETTE, Justices.

LUSK, J.

The appellants, Dr. H. R. Dewey, Doris Hofstra (spelled Hoffstra in the indictment) and Johanna Eizema, and others, were jointly indicted of the crime of "committing on act grossly disturbing the public peace and health, openly outraging public decency and injurious to public morals," alleged to have been committed as follows:

"The said Dr. H. R. Dewey, Dr. Kenneth E. Dewey, Doris Hoffstra, Johanna Doe, whose true

name is unknown, and Jane Doe, whose true name is unknown, on the 30th day of April, A. D. 1951, in the County of Multnomah and State of Oregon, then and there being and then and there unlawfully conspiring, confederating and agreeing with each other thereto, did on the said day in the said county and state, wilfully and wrongfully set up, equip, furnish with apparatus, and thence continuously until the 26th day of June, 1951, and ever since said time, keep and maintain a certain public place, known as the Dewey Clinic, in the Alisky Building, in the City of Portland, said county and state, with the intent and purpose of them, the said Dr. H. R. Dewey, Dr. Kenneth E. Dewey, Doris Hoffstra, Johanna Doe, whose true name is unknown, and Jane Doe, whose true name is unknown, of wilfully, wrongfully and unlawfully committing, producing and procuring abortions in said public place, upon women pregnant with child, and so having set up, furnish, equipped, kept and maintained said public place with the intent and for the purpose aforesaid, the said Dr. H. R. Dewey, Dr. Kenneth E. Dewey, Doris Hoffstra, Johanna Doe, whose true name is unknown, and Jane Doe, whose true name is unknown, did on the 25th day of June, 1951, in the said public place known as the Dewey Clinic in said county and state, wilfully and wrongfully commit and produce an abortion upon one Ila Cowles, she, the said Ila Cowles, then and there being a woman pregnant with child, and did then and there between the 30th day of April, 1951 and the 26th day of June, 1951, and ever since said time, wilfully and wrongfully commit and produce upon women then and there pregnant with child, the names and numbers of which women are to the Grand Jury unknown, abortions contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.''

The indictment charges a violation of ORS 161.310, generally known as the ''Nuisance Statute.'' *State v. Nease,* 46 Or 433, 440, 80 P 897.

The defendants first hereinabove named were convicted as charged and have appealed from the consequent sentence.

The questions raised by the defendants' first contention, *viz.,* that the indictment does not state facts sufficent to constitute a crime, because the statue under which the prosecution was brought is void for vagueness and because the indictment charges acts for which punishment is expressly provided by the Code, are set at rest by our recent decision in *State v. Elliott,* 206 Or 82, 277 P2d 754 (rendered after the briefs in the present case were filed), which reaffirmed the doctrine of *State v. Atwood,* 54 Or 526, 102 P 295, 104 P 195. Because of the decision in the Elliott case learned counsel for defendants waived the contention at the oral argument.

As a second assignment of error the defendants assert that the court committed reversible error in overruling defendants' objections to the admission of certain testimony which it is claimed was incompetent under the rules of res judicata or estoppel by judgment. One of the acts charged in the indictment was that on June 25, 1951, the defendants did "wilfully and wrongfully commit and produce an abortion upon one Ila Cowles, she, the said Ila Cowles, then and there being a woman pregnant with child." Ila Cowles was called as a witness by the state. Before she testified the prosecuting attorney informed the court that the defendant, Dr. H. R. Dewey, along with the defendants, Doris Hofstra and Johanna Eizema, had been indicted for the crime of manslaughter by abortion performed upon Ila Cowles and that Dewey had been separately tried on the charge and acquitted. At a later point in the trial the record in that case was received in evidence. It showed that the indictment was returned

July 6, 1951, and a judgment of acquittal of the defendant, Dr. H. R. Dewey, entered December 17, 1951. The indictment in the case now under consideration was also returned July 6, 1951, but the trial was not commenced until June 1, 1953.

After having advised the court of this situation, the prosecuting attorney stated that the purpose of the testimony to be given by Ila Cowles was to show arrangements made with the defendants in connection with their business of performing unlawful abortions. Over appropriate objections of counsel for the defendants the court permitted the witness to testify to the following effect: She stated that her home was in Eugene, that she was a married woman with two children, and that on June 25, 1951, she was pregnant with child and in good health, and on that day went to the Dewey Clinic (the name under which the defendant, Dr. H. R. Dewey, operated) to have an abortion. She saw the defendant, Doris Hofstra, in the office and showed her a slip of paper, whereupon Doris Hofstra said:

"Oh, yes, there isn't anything to it. We give abortions all the time. We're the only ones that give it with an anesthetic. There is nothing to it. We do it all the time for girls from California and they go home in about four hours."

Acting under the instructions of the defendant, Doris Hofstra, the witness, Ila Cowles, put on a hospital gown and waited for about an hour in a small room in the defendants' suite. The defendant, Dr. H. R. Dewey, finally came and made a pelvic examination and told her she was three months pregnant. She said that she was only two months pregnant. After that Mrs. Hofstra told her that the charge would be $310.00, but the witness said that she did not have that much

money, and Mrs. Hofstra then came down in her price to $210.00. The witness said that she would have to see her mother-in-law, who had accompanied her to Portland from Eugene and was waiting for her in the automobile. Mrs. Hofstra said that there would be a charge of $10.00 for the examination. The witness paid this amount, sought out her mother-in-law, and, finding that between the two of them they had $180.00, they both went to the Dewey Clinic with the money, paid it to Dr. Kenneth E. Dewey (one of the defendants), and, at his demand, delivered to him her wrist watch to secure payment of the remaining $30.00. Dr. Kenneth E. Dewey also required the witness and her mother-in-law to sign a printed form concerning which he said, ''You know, this is outside of the law, and you have to sign this to protect us if anything should happen.'' The witness did not know what the words on the printed form were. Thereupon, the witness, acting under Dr. Kenneth E. Dewey's instructions, went into the same little room and put on a hospital gown, and was told to lie down and sleep if she could. The witness further testified that on a second visit to the Dewey Clinic she saw several little rooms with cots in them and another room in which there was an operating table with stirrups on the side that you could raise and lower. She testified that When Dr. H. R. Dewey made the pelvic examination he had tools like a doctor. This is as far as the testimony of the witness, Ila Cowles, went concerning her experience with the Dewey Clinic.

Mrs. Clara Brown, the mother-in-law of Ila Cowles, corroborated the latter insofar as she had first-hand knowledge of the facts to which Ila Cowles testified.

Additional evidence relating to this issue was given by Donald Arthur Cowles, husband of Ila, and Robert

Vernon Mollett, a former police officer. They both testified to a conversation in the former's home on July 2, 1951, between Cowles and the defendants, Doris Hofstra and Johanna Eizema, and which was overheard by Mollett, who was listening in another room to which the voices were carried by means of a microphone that had been installed for that purpose. According to this testimony the named defendants said they were nurses for Dr. Dewey. Cowles testified:

> "They said, 'you know the type of business we do. It is over the grapevine. And the irony of it all is that we do policemen and court house wives and district attorney's office.'"

Mollett testified that he heard the defendant, Johanna Eizema, make this statement:

> "Well, she mentioned that he had probably heard of the type of thing they did by the grapevine and she didn't actually name it by name except at one point she did mention there was a great deal of commotion in Portland and that the irony of the whole thing was that they did, they had as patients the wives of police officers and people from the court house at Portland for the same sort of thing."

The prosecuting attorney stipulated that the foregoing testimony of Ila Cowles, Mrs. Clara Brown, Donald Arthur Cowles and Mollett was in substance given by them in the trial of the defendant, Dr. H. R. Dewey, for manslaughter by abortion.

■ Although the inadmissibility of the foregoing evidence is urged on behalf of all the defendants, the objection can in no event be available to any of them other than Dr. H. R. Dewey, for he alone was acquitted of the charge of manslaughter by abortion.

■ The argument of counsel for the defendants proceeds upon the erroneous assumption that every fact directly in issue in the former prosecution was neces-

sarily determined by the verdict of acquittal. That this is not the law either in Oregon or elsewhere we think can readily be demonstrated.

■ The parties are agreed that the doctrine of res judicata or estoppel by judgment is applicable in criminal cases. See 2 Freeman on Judgments (5th ed) 1364 § 648; *United States v. Oppenheirmer*, 242 US 85, 61 L ed 161, 37 S Ct 68, 3 ALR 516; *State v. Erwin*, 101 Utah 365, 120 P2d 285; annotation 147 ALR 992. In this state it is so declared by statute. ORS 43-160 provides:

> "That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

The foregoing provision, enacted in 1862, has always been a part of the Code of Evidence of this state. See Deady's General Laws of Oregon, p 315, and § 726. The section is made applicable to criminal cases by ORS 136.510, which reads:

> "The law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specially provided in the statutes relating to crimes and criminal procedure."

■■ In its consideration of the subject this court, like others, has uniformly made a distinction between cases in which the second action is upon the same claim or demand as the first, and those in which it is upon a different claim or demand. In the former case the judgment, if upon the merits, is an absolute bar and concludes the parties and their privies not only as to every matter that was actually litigated but as to any other matter that might have been litigated. But in the latter case it is essential that the issue in the second action was a material issue in the first and necessarily determined therein. *Beezley v. City of*

*Astoria,* 126 Or 177, 188-190, 269 P 216, 60 ALR 504. As we said in *State v. Vincent,* 152 Or 205, 212, 52 P2d 203, "the judgment in the superior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered." See, also, *Farmers & Fruit Growers' Bank v. Davis,* 93 Or 655, 665, 666, 184 P 275; *Roots v. Boring Junction Lum. Co.,* 50 Or 298, 92 P 811, 94 P 182; *Heilner v. Smith,* 49 Or 14, 88 P 299; *La Follett v. Mitchell,* 42 Or 465, 471, 472, 69 P 916, 95 Am St Rep 780.

In the Beezley case we quoted with approval the following statement of the rule by Mr. Justice Field in *Russell v. Place,* 94 US 606, 24 L ed 214:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

See, also, *Packet Co. v. Sickles,* 72 US 580, 592, 18 L ed 550; *Cromwell v. Sac County,* 94 US 351, 24 L ed 195.

Our most recent decision is *Wagner v. Savage,* 195 Or 128, 244 P2d 161, where the question was whether a decree for the defendant, in a suit for the specific performance of an oral agreement to convey to the plaintiff defendant's property upon his death, operated as an estoppel in a subsequent action of assumpsit to recover the reasonable value of the same services which in the first suit the plaintiff had alleged constituted the consideration for the oral agreement. As there were no findings in the suit for specific performance and the decree merely recited that the equities were with the defendants and against the plaintiff and dismissed the suit with prejudice; and, as the second case involved a different claim or demand from the first, and there was, therefore, no way of determining upon which of the several issues made by the pleadings the court had based its decree, we held that the plea of res judicata was not sustained.

Counsel for the defendants relies upon *Ruckman v. Union Railway Co.,* 45 Or 578, 581, 78 P 748, 69 LRA 480; the *Wagner* case; and *Winters v. Bisaillon,* 153 Or 509, 513, 514, 57 P2d 1095, 104 ALR 968, in all of which language is used to the effect that, where the second action is upon another claim or demand from the first, "the former judgment is not a bar, except as to questions actually determined or directly in issue." The same language may be found in other of our decisions. See *Runnells v. Leffel,* 105 Or 346, 361, 207 P 867.

The contention seems to be that, even though the second action involves a different claim or demand from the first, all matters put in issue by the pleading must be conclusively deemed to have been determined whether or not there is anything to show that they were either actually or necessarily determined.

The decisions, however, do not bear out this theory. The Wagner case, for example, could not have been decided as it was were counsel's contention sound, because there one of the facts in issue was the rendition of the services to recover the value of which the second action was brought. Yet we held from an examination of the record before us that that issue had not been necessarily determined in the first suit. Although in *Winters v. Bisaillon* the judgment in the first action was held to be available as an estoppel in the second, the decision was not based upon any such view of the doctrine of res judicata as is contended for by the defendants. The case arose out of a collision between an ambulance driven by Winters and an automobile driven by Bisaillon. Winters sued first to recover for personal injury, and a jury trial resulted in a verdict for the defendant. He then sought in another action to recover damages for injury to his ambulance and was met with a plea of estoppel by judgment. The plea was sustained because of the particular circumstances that in the first case neither the injury nor the fact that it was proximately caused by the collision was in dispute; in the second case, therefore, it was held that the verdict of the jury necessarily determined either that the defendant was not negligent or that the plaintiff was guilty of contributory negligence. And, since the plaintiff could not recover in the second action unless both of these issues, involving as they did the same accident, were decided in his favor, he was estopped to maintain the action. The governing principle was quoted from 2 Freeman on Judgments (5th ed) 1465 § 693 as follows:

> "Matters which follow by necessary and inevitable inference from an adjudication because the judgment could not have been rendered without

determining them are as effectually concluded thereby as though specifically and in terms adjudicated.''

■ The rule is no different in criminal cases. Where the second prosecution is for another offense, ''the previous judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated. Thus an acquittal of the charge of seduction does not adjudicate the question of sexual intercourse although that was one of the issues in the case, since the acquittal might have been due to the failure to establish other facts essential to a conviction.'' 2 Freeman on Judgments (5th ed) 1365 § 648. See, also, Dangel, Criminal Law 351; *Harris v. State,* 193 Ga 109, 17 SE2d 573, 147 ALR 980; *State v. Barton,* 5 Wash2d 234, 105 P2d 63; *Sealfon v. United States,* 332 US 575, 92 L ed 180, 68 S Ct 237; *United States v. Meyerson,* 24 F2d 855; *United States v. Morse,* 24 F2d 1001; *State v. Erwin,* 101 Utah 365, 120 P2d 285; *Bell v. State,* 57 Md 108; *State v. Coblentz,* 169 Md 159, 180 A 266.

*United States v. Meyerson* and *United States v. Sealfon,* both supra, afford illustrations of the application of the rule. In the former case a defendant named Katz had been acquitted of the charge of using the mails for the purpose of executing a scheme to defraud. He was thereafter prosecuted under an indictment for conspiracy to violate a section of the National Bankruptcy Act, the charge involving the same fraud as that alleged in the first indictment. On motion to quash the court held that the acquittal of Katz on the first charge was a bar to the second prosecution. This was determined, however, not from a bare inspection of the two indictments and the verdict of acquittal in the first case, but from an examination of the record of the trial in that case, which included

a ruling of the court directing a verdict of acquittal upon a ground which conclusively determined that Katz could not have been a party to the conspiracy alleged in the second indictment. Similarly, in the Sealfon case the defendant, Sealfon, was acquitted upon an indictment charging conspiracy to defraud the United States, but was afterwards convicted of the substantive offense involved in the first indictment. The conviction was set aside by the Supreme Court. The court, in an opinion by Mr. Justice Douglas, said that the substantive offense and a conspiracy to commit it are separate and distinct offenses, and that res judicata "operates to conclude those matters in issue which the verdict determined though the offenses be different." Whether "the jury's verdict in the conspiracy trial was a determination favorable to petitioner of the facts essential to conviction of the substantive offense" depended upon "the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial". From an examination of these matters, and in particular of the *only* instruction given on the first trial "keyed to the particular facts of the case", the court found that the verdict of acquittal necessarily determined that the defendant did not enter into an agreement with another defendant to write a certain letter, which agreement was "the core" of the prosecution's case in each case.

On the other hand, in *State v. Barton*, supra, where the defendant was at first acquitted of the crime of murder in the first degree committed in the course of a robbery and later was indicted for the same robbery and found guilty, the court held that the judgment of not guilty in the first case did not operate as an estoppel in the second, notwithstanding the defendant's con-

tention that the first verdict was based on defendant's defense of alibi, and, therefore, as it was claimed, conclusively determined that he was not present and could not have participated in the robbery. The court said:

"In the murder prosecution the appellant's defense of alibi and the various related matters of fact set out in detail in his amended special plea were not actually or necessarily adjudicated, nor can it be said that the issues were limited, as appellant contends. Every material allegation of the information was placed in issue by the appellant's plea of not guilty, and the state had the burden of proof beyond reasonable doubt. It is not possible to determine whether the jurors returned a verdict of acquittal because they credited the testimony in support of appellant's alibi, or for the reason that they found the state's evidence insufficient as to one or more essential elements of the offense charged. They could have utterly disregarded all of the testimony adduced by the appellant in his defense and yet have returned a verdict of not guilty. The verdict and the judgment based thereon were not, therefore, res judicata as to appellant's alibi, nor as to any other particular fact. They were res judicata only as to the ultimate fact that appellant was not guilty of the crime of which he was accused."

Under a similar state of facts a different result was reached by the Georgia court in *Harris v. State*, supra. Which of these decisions is to be preferred is a matter of no importance at the moment; they both stand for the principle which we have heretofore stated and which is recognized by all the text writers on the subject and the great majority of the decisions. Apparently opposed to the general rule are *United States v. Clavin*, 272 Fed 985, and *United States v. Rachmil*, 270 Fed 869, both of which hold that an acquittal upon an indictment for conspiracy is a bar to a subsequent

prosecution for commission of the substantive offense which was the object of the conspiracy. As stated in *United States v. Halbrook,* 36 F Supp 345, these decisions are "out of line with the majority of the cases." See Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Ia L Rev 317, 337.

The present indictment is for a different offense than that charged in the indictment in the first case. It alleges as an incident of the nuisance that the defendants wrongfully committed and produced an abortion upon Ila Cowles, she being a woman pregnant with child. The court permitted the state to introduce evidence of arrangements made by Ila Cowles with the defendants for an abortion, of circumstances indicative, perhaps, of such arrangements, and of the fact that Ila Cowles was at the time a pregnant woman. The elements of the crime of manslaughter by abortion, of which the defendant, Dr. H. R. Dewey, was acquitted, are (1) administering to a woman pregnant with child of any medicine, drug or other substance, or the use of an instrument or other means, with intent thereby to destroy such child; (2) unless the same is necessary to preserve the life of the mother; (3) the death of the child or the mother. ORS 163.060. The indictment followed the language of the statute, and the burden was upon the state to prove beyond a reasonable doubt all its essential allegations. Failure so to prove any one of them would authorize a verdict of not guilty. We have before us no part of the record in the former case pertinent to the question under consideration, except the indictment, the plea of not guilty, and the verdict. Our only knowledge concerning the testimony given on the trial of that case comes from the stipulation of the district attorney, to which we have referred, that the testimony of four witnesses, heretofore summar-

ized, was in substance given on the other trial. The instructions are not here. It is, therefore, impossible to say upon what ground the verdict of acquittal was based, or whether the state failed to prove one or all of the essential elements of the crime. There being no extrinsic evidence to aid in a determination of the question, "the whole subject-matter of the action" is, as Mr. Justice Field said in *Russell v. Place,* supra, "at large" and "open to a new contention." The verdict, therefore, was not a conclusive determination of the facts in question and the evidence objected to was properly admitted.

The defendants further contend that they were entitled to a directed verdict of acquittal for the reason that the acts alleged were not "openly done," but rather in the privacy of a physician's office. This question likewise is foreclosed by the decisions in the Elliott and Atwood cases. In the former we quoted with approval the following from the Atwood case:

"* * * They do openly outrage public decency, and are injurious to public morals, and such is the effect of the acts charged, even though not done in a public place, or in view of the public."

The evidence in the case at bar shows that the fame of the Dewey Clinic had spread as far as California and had attracted customers from that state. Its notoriety was such as to engage the attention of Susan Oester, an investigator for the district attorney for Multnomah County; of Miss Maris Patricia Lillie, a police officer; and Rolla Crick, a reporter for the Oregon Journal. The first two visited the Dewey Clinic for the purpose of obtaining evidence. They represented themselves as pregnant, and pretended to desire abortions and made arrangements to that end. Their testimony was in substance much like that of

Ila Cowles. The witness, Rolla Crick, represented to the defendant, Dr. Kenneth E. Dewey, that he "had a girl friend in trouble, that we couldn't have a baby at this time," and, after obtaining information about the method of the proposed operation and its cost, agreed to bring her to the clinic on the day appointed for the purpose of having an abortion. As previously stated, there was no contradiction of any of the state's evidence. It is impossible to read the testimony without reaching the conclusion that the defendants were engaged in operating a full-scale "abortion mill", which constituted an open affront to public decency within the meaning of the statute and our decisions. See *People v. Hoffman,* 103 NYS 1000, aff. 189 NY 561, 82 NE 1130.

It is argued, however, that the state failed to prove the corpus delicti because there is no evidence that the defendants committed an abortion upon any woman pregnant with child.

The statute under which the defendants are prosecuted is ORS 161.310 and reads:

"If no punishment is expressly prescribed for the act by the criminal statutes, any person who willfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals, upon conviction, shall be punished by imprisonment in the county jail for not less than one month nor more than six months, or by fine not less than $50 nor more than $200."

The indictment in *State v. Elliott,* supra, was in identical language with the indictment here save for necessary changes in names, dates and places, and we there said that "the gravamen of the charge in the indictment is unlawfully keeping and maintaining a

public place for the purpose of producing illegal abortions, which act grossly disturbed the public peace and health and openly outraged public decency, being injurious to public morals. The allegations in the indictment respecting conspiracy, abortions, etc., were merely elements, incidents, means or circumstances by which the substantive crime was committed and not the substantive crime itself.''

As the court said in *People v. Hoffman,* supra, ''The offense of abortion is one thing. That of maintaining premises open to the public for the purpose of consummating that crime is another and separate offense against the peace and good order of the state.''

If, however, it was necessary for the state to prove that abortions were actually committed at the Dewey Clinic, there is ample evidence from which this fact could be inferred. *People v. Curtis,* 136 NYS 582, aff. 206 NY 747, 100 NE 1131, was an indictment for the offense of committing and maintaining a public nuisance by keeping and maintaining a building for the unlawful purpose of committing and performing therein unlawful abortions, and charging that such abortions were performed therein. Testimony of a police officer similar to that of the witness, Rolla Crick, in this case and of two women acting as detectives similar to that of Mrs. Oester and Miss Lillie, was held, correctly as we think, to make it ''a question of fact as to whether it was not actually a place where operations were performed and persons harbored as charged in the indictment.''

It was not necessary to prove the allegation of the indictment that the defendants performed an abortion on Ila Cowles. If, as has been suggested, that allegation constituted an essential element in the description of the particular nuisance charged, without proof of

which the offense of setting up and maintaining a nuisance was not made out, then, by a parity of reasoning, if the indictment had alleged that abortions were performed on 10 or 100 pregnant women, naming them, failure to prove any one or more of such charges would have been fatal to the state's case. We are not persuaded that this is the law.

In *State v. Atwood,* supra, which is cited as a contrary decision, the only question was whether the indictment stated facts sufficient to constitute a crime. 54 Or at p 529. There was no question of sufficiency of the proof. The indictment was similar to the one in the present case, and the defendant contended that it was insufficient for the reason, among others, that it did not allege facts showing that any unlawful abortions were committed. The court rejected this contention, saying:

> "The charge is that the house was maintained with the intent and purpose of willfully, wrongfully and unlawfully producing abortions. It was not the purpose of the indictment to charge that the intention of the defendants was to commit the crime of killing by producing abortions under Section 1748, B. & C. Comp., but that they were conducting a business that openly outraged the public decency and was injurious to public morals, and the business with which the defendants are charged clearly comes within those terms." 54 Or at pp 535, 536.

The court further said:

> "The allegations of abortion upon Mahala Roberts and other women do not state facts that constitute a crime under Section 1748, B. & C. Comp., and are not intended to, but are only allegations of acts done in the performance of the purpose and intent charged, which are necessary elements of the nuisances and do not charge separate offense: State v. Waymire, 52 Or. 281 (97 Pac. 46)."

The court concluded that the acts charged against the defendants constituted a nuisance *per se*. The court was not called upon to decide whether a failure to prove the specific abortion alleged would amount to a failure of proof even though there was substantial evidence that abortions were actually performed by the defendants in the place described and that the house was maintained for that purpose. No such question was presented. The decision, therefore, is not a controlling precedent here.

In *State v. Waymire*, cited in the Atwood case, the nuisance consisted in the acts of the two defendants, a man and a woman, which were designed to accomplish their purpose of exposing the mayor of the city of Portland to public disgrace as one seemingly engaged in an attempt to ravish the woman defendant. The woman defendant was to make a loud outcry and the man, who was lying in wait, would then break and shatter the door of the office in which the supposed crime was being attempted, thus attracting a "concourse of the citizens." The defendants had each their separate parts to play in carrying out their conspiracy, and the combined acts of both were essential in order to produce the intended result. But in this respect the case at bar is entirely different, and, had there been no evidence at all about Ila Cowles, there still would have been sufficient evidence of the offense charged.

The question here is not governed by the rule that where the indictment is for an offense which is local in its nature, such as larceny in a building, or burglary, or maintaining a liquor nuisance, the allegation as to the place is a necessary part of the description of the offense and must be proved as laid. 2 Wharton, Criminal Evidence (11th ed) 1862 § 1062. An illustrative case is *Dennis v. State*, 91 Ind 291, where the charge

was maintaining a public nuisance, to-wit, a slaughter-house, "near the residence of Josephy Loehr, Noble Warrum and Rufus Scott," it being alleged that the smells from the slaughter-house, etc., were offensive to the named individuals and others. The phrase quoted was regarded by the court "as matter of description, and although it was alleged unnecessarily, and was not a material averment in the affidavit and information, yet, having been alleged, it must be proved, under the decisions of this court, precisely as charged, and a variance will be fatal." Therefore it was held that an instruction which, in referring to the location of the slaughter-house, omitted the name of one of the three individuals mentioned in the phrase we have quoted was erroneous. *Fulk v. State,* 19 Ind 356, is a simliar decision. Both cases involve application of the rule that "Where there is an allegation which describes, defines, qualifies, or limits a matter to be charged, it is taken as a descriptive averment, and the general rule obtains that it must be proved as laid, even though such particularity of description is unnecessary." 2 Wharton, op. cit., 1911 § 1090. Among other cases cited by the author are several where money alleged to have been stolen was unnecessarily described as "money of the U.S.", and, the proof failing in this particular, the conviction was reversed. See p. 1912, note 17. A similar question was involved in *State v. Neilon,* 43 Or 168, 174, 73 P 321, though the court found it unnecessary to decide it.

Upon this subject of surplusage in the indictment Mr. Bishop says:
"If a necessary allegation is made unnecessarily minute in description, the proof must satisfy the descriptive as well as main part, since the one is essential to the identity of the other. Thus,—
"A needless adjective, prefixed to an essential

noun, being descriptive of what cannot be rejected, must be proved also; as, if the indictment is for malicious mischief to 'white-oak' trees, or for larceny of a horse described by its sex or color or brand, these particulars of the things, wholly unnecessary to be stated, must be proved, or the variance will be fatal.'' 2 Bishop's New Criminal Procedure (2d ed) p. 401.

▇ We are not concerned in this case with any question of identification of place or object. The nuisance consisted of setting up and maintaining a place, specifically designated, together with the necessary equipment, for the performing of abortions and the actual performing of abortions in that place. All these things were amply proved.

There are numerous classes of cases in which it is held that failure to prove all that is alleged in the indictment will not stand in the way of a conviction. Of these may be mentioned prosecutions charging a conspiracy, in which it is not necessary to prove all the overt acts alleged (*Short v. United States*, 91 F2d 614, 112 ALR 969); indictments for contributing to the delinquency of a minor in which it is sufficient to prove one or more of the acts of misconduct alleged (*State v. Moore*, 194 Or 232, 240, 241 P2d 455); and prosecutions for obtaining money or property by false pretenses in which proof of the falsity of one or more of the pretenses alleged is all that is required (22 Am Jur 500, False Pretenses § 99).

It is argued in effect that cases of this kind are not pertinent to a prosecution under the nuisance statute where the grand jury or the district attorney defines the crime by the indictment or complaint. But only the legislature has the power to define a crime. The statute under which this prosecution was brought ''was intended by its language to cover offenses against

the public peace, the public health, and the public morals, not elsewhere made punishable by the Code, and which were known at common law as 'indictable nuisances.' " *State v. Waymire,* supra, 52 Or at p 285; and "We are, therefore, required to resort to the common law to ascertain what act 'grossly outrages public decency and is contrary to good morals,' as applied to criminal prosecutions." Id. The indictment states the charge, but the court, as the Waymire case sufficiently shows, determines whether the facts alleged constitute a crime as defined by the legislature.

It cannot be said that without the allegation of an abortion on Ila Cowles the grand jury would not have found the defendants' activities to be a violation of the statute. A contention of that kind was considered by the court and rejected in *People v. Haynes,* 11 Wend (NY) 557. The indictment was for obtaining property by false pretenses, and defendant argued that proof of all the pretenses alleged was essential to support a conviction, for the reason that "the indictment shows that the grand jury found the goods were trusted upon the faith of all the false pretenses set forth, and that without the existence and falsehood of all, we must presume it would not have been found; and to permit a conviction upon proof only of a part of them, would be a conviction of an offense different from the one contained in the indictment." Answering this contention the court said:

"* * * These reasons were urged against the position that part of the false pretenses need only be proved, if sufficient in themselves to convict. If all were material to constitute the offence charged, the argument would be sound, and it would follow that all should be proved, else a conviction would be unjust; but the position that part need only be proved, assumes that they may and must be suffi-

cient in law to bring the case within the statute; and then I am unable to discover how it is possible injustice can be done to the prisoner if convicted.

"We all know that in indictments as in declarations, not only many counts are often added embracing the same offence, and that two or more distinct offences are sometimes set forth in the same count, from abundant caution; but the proof of one always authorizes the conviction. So in this case. We can perceive no objection to the grand jury setting out any number of false pretences, of which there may be any evidence before them for greater caution, negativing each specifically; and if it should turn out on the traverse, that there were more laid than were true, or material to establish the offence, they may be rejected as surplusage, and need not be proved. The result would not show that the prisoner was convicted of an offence, different from the one charged by the grand jury, but that the grand jury had found in the indictment more matter than was essential to constitute the offence. The prisoner would have notice of the offence charged against him, and something more."

So it was said in *People v. Townsend,* 3 Hill (NY) 479, where the indictment was for erecting and maintaining a dam which caused animal and vegetable substances to accumulate in large quantities in the pond made by the dam, corrupting the water and making it noxious and offensive: "It is not always necessary to prove every averment contained in the indictment, and if the prosecutor had stated twenty different ways in which the dam became a nuisance, it would have been sufficient to prove that the injury arose in any one of those ways."

In *State v. Beal,* 94 Me 520, the indictment was for erecting and maintaining a nuisance, to-wit, a certain piazza which obstructed a public highway. The indictment described the piazza with particularity by

metes and bounds. The evidence showed, however, that part of the piazza was without the street and part within, and the defendant contended that as the indictment alleged that the whole piazza was a nuisance there was a fatal variance between allegation and proof. This contention was rejected. The court recognized the rule "that when a person or thing necessary to be mentioned in an indictment is described with even unnecessary particularity, all the circumstances of the description must be proved; for they are all made essential to the indentity, 1 Greenleaf on Evidence, § 65; and a variance in proof of particulars is fatal, for proof of identity may depend upon preciseness of description." The court continued:

"* * * But in this case no complaint is made either in exceptions or argument that *a* piazza with the particulars described was not proved with sufficent particularity; but the complaint is that all of the piazza so described and proved was not within the street. And this raises another, and, we think, a different question, and that is, does the failure to prove the allegation of an offense to the extent charged result in a fatal variance between allegation and proof. We think not necessarily. It is laid down by Mr. Wharton in his work on Criminal Evidence, § 145, that failure to prove allegations of number, quantity and magnitude in their entirety is not a fatal variance, where the proof pro tanto supports the charge. And we think this case falls within the principle of that rule. The piazza in this case was charged to be wholly a nuisance, to the limits of the description, and the state sought to prove that fact. If the state failed to prove it to the full extent, it is not the less true, as admitted in argument, that the piazza in parts was a nuisance. If one were charged with creating a nuisance by placing a log twenty feet long in the street, would it be reasonable to hold that the prosecution must fail if it should appear that six inches of one end

of it extended beyond the street line? We think it would not. And what would be true of a log is true of a piazza. The law requires no such nicety even in criminal pleading. By so holding, no right of the defendant is jeopardized. His defense is not thereby made more difficult or uncertain.''

We think that the foregoing is ample authority for our decision. In effect, the court held that, although the prosecution had charged a more extensive nuisance than it proved, still, if what it proved constituted a nuisance, that was sufficient. It cannot be questioned that what was proved in this case constituted a nuisance, without proof of the abortion on Ila Cowles.

The allegations of the indictment respecting abortions do not fall within the rule that unnecessary descriptive averments must be proved, but, as was said in the Elliott case, are ''merely elements, incidents, means or circumstances by which the substantive crime was committed.''

■ We conclude that where it is established by competent evidence, as it was in this case, that the defendants set up and maintained a place and the necessary equipment for the purpose of performing illegal abortions upon pregnant women, and there is evidence from which it could be found that such abortions were actually performed, the objection that the nuisance has not been proven as charged, because of the failure to prove a particular abortion alleged, is without substance.

Other arguments in the defendants' brief in support of their claim that there was no proof of the *corpus deliciti* are so clearly lacking in merit that they do not call for discussion.

There is no error in the record and the judgment is affirmed.

TOOZE, J., dissenting.

I dissent from the result reached in the majority opinion. I am convinced that the judgment of conviction in this case should be reversed as to all defendants and remanded for a new trial.

For the purposes of this opinion, I am assuming that the majority's interpretation and application of the doctrine of estoppel by judgment as it applies to the defendant Dewey is correct, although based upon the effect of ORS 136.620 (1), a logical decision might be rendered to the contrary. Proceeding, however, upon the assumption stated, I shall direct my attention solely to the question of what the result should be in the light thereof. We must not overlook the fact that the rights of two other defendants are involved here, as well as the rights of the defendant Dewey. Those defendants, who have not been tried on the manslaughter charge, are in no way concerned here in the doctrine of res judicata.

It is conceded that upon the trial of the instant case the state did not prove nor attempt to prove that an unlawful abortion was performed upon one Ila Cowles, as an essential element of the crime charged in the indictment. It is my opinion that this amounted to to a failure of proof as to a material allegation of the crime charged and, therefore, constituted a fatal variance.

It is specifically alleged in the indictment:

"* * * the said Dr. H. R. Dewey, Dr. Kenneth E. Dewey, Doris Hoffstra, Johanna Doe, whose true name is unknown, and Jane Doe, whose true name is unknown, did on the 25th day of June, 1951, in the said public place known as the Dewey Clinic in said county and state, wilfully and wrongfully commit and produce an abortion upon one Ila

Cowles, she, the said Ila Cowles, then and there being a woman pregnant with child, and did then and there between the 30th day of April, 1951 and the 26th day of June, 1951, and ever since said time, wilfully and wrongfully commit and produce upon women then and there pregnant with child, the names and numbers of which women are to the Grand Jury unknown, abortions   *   *   *.''

The majority states: ''It was not necessary to prove the allegation of the indictment that the defendants performed an abortion on Ila Cowles.'' In my opinion, that statement is in direct conflict with long established and, in fact, elementary rules of pleading and proof in criminal cases. And under those same elementary rules of pleading and proof, had the indictment specifically charged 10 or 100 particular abortions, as suggested in the majority opinion, the state would have been required to prove each and every one of them. The absurdity in the suggested situation does not lie in the requirement as to proof, but in the original insertion of the specific charges in the indictment. Such particularization is, of course, unnecessary to state fully a crime under the so-called nuisance statute, but if the state elects so to state its case, then it is bound to prove it as alleged.

To warrant a conviction in any criminal case, it is incumbent upon the state to establish by proof beyond reasonable doubt each and every essential element of the crime charged; if it fails to establish any one or more of such elements, it has failed to prove its case. The majority opinion is in agreement on this premise. Therefore, if the allegation respecting the abortion upon Ila Cowles is a material part of the crime charged in this case, then it is obvious that there has been a failure of proof.

ORS 161.310, under which statute the instant case is being prosecuted, provides:

"If no punishment is expressly prescribed for the act by the criminal statutes, any person who willfully and wrongfully commits any act which grossly injures the person or property of another, *or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals,* upon conviction, shall be punished by imprisonment in the county jail for not less than one month nor more than six months, or by fine not less than $50 nor more than $200." (Italics mine.)

*There is no statute of this state which specifically defines as a public nuisance or crime the acts alleged in the indictment in the instant case.* ORS 161.310, supra, does not define any specific crime. It is sort of a catch-all statute, designed to cover all criminal acts not otherwise specifically defined and prohibited by law. It contains no standards nor yardsticks by which alleged wrongful acts are to be weighed, except the broad generalization: "any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency and is injurious to public morals." Therefore, in every prosecution under this statute, it is necessarily left to the grand jury or the district attorney to determine initially what particular act or combination of acts constitutes a public nuisance within the meaning of the law. The grand jury expresses its determination in an indictment; the district attorney, in an information or complaint. In its indictment, the grand jury portrays the conditions which it charges disturb the public peace or health and openly outrage the public decency and are injurious to the public morals. The particular act or combination of acts it

charges in the indictment constitutes the particular public nuisance which the defendant must be prepared to defend against; it is the particular nuisance that must be proved by the state. In returning an indictment, it is exclusively the province of the grand jury to so describe the alleged nuisance. It cuts its cloth according to its own measurements; it builds the house, and the house must be maintained and sustained as erected. *The fact that it might have alleged a public nuisance with less particularization, or by the omission of one or more of the particular acts charged, is wholly immaterial.* The material thing is that it did incorporate the alleged acts in the indictment *as a part of the nuisance it charged,* and that is the alleged public nuisance before us for consideration, not something different.

If the allegation in the instant indictment concerning the alleged abortion upon Ila Cowles is not a material allegation, necessary to be proved, then it must be immaterial and surplusage, and not an issue in the case. If it is not an issue in the case, then all the discussion found in the majority opinion concerning the doctrine of estoppel by judgment is unnecessary and may likewise be considered as surplusage. But, as I shall later point out, the allegation is not immaterial, nor may it be treated as surplusage; on the contrary, it is an essential element of the particular nuisance charged in the pending indictment, *is a material issue in the case,* and the state was required to prove it in order to justify a conviction. That the allegation is an essential element of the nuisance charged is established by our own decisions.

*State v. Atwood,* 54 Or 526, 102 P 295, 104 P 195, is the first of our decisions involving a situation similar to that in the case at bar. All our later decisions have

been based upon and followed the Atwood case, even as to the constitutionality of the nuisance statute itself.

The allegations of the instant indictment are the same as appear in the indictment in the Atwood case and also in the indictment in the later case of *State v. Elliott*, 206 Or 82, 277 P2d 754. Of course, names and dates are different, but otherwise the indictments are in the same form and language.

In the Atwood case the indictment charged:

"* * * and so having set up, furnished, equipped, kept and maintained the said house and place with the intent and purpose aforesaid, the said C.H.T. Atwood and C. H. Atwood, on the 4th day of September, 1908, in the said public house and place, known as the 'maternity hospital' aforesaid in the said county and state, *did willfully and wrongfully commit and produce an abortion upon one Mahala Roberts, she, the said Mahala Roberts, then and there being a woman pregnant with child, and did then and there,* between the said 1st day of January, 1908, and the said 1st day of November, 1908, *willfully and wrongfully commit and produce upon women then and there pregnant with child,* the names and numbers of which women are to the grand jury unknown, *abortions,* contrary to the statutes * * *." (Italics mine.)

But one question was directly raised by the assignments of error in the Atwood case; i.e., " 'that the indictment upon which defendants were arraigned and convicted does not state facts sufficient to constitute a misdemeanor or crime' ",

"defendants urging, first, that the acts were lawful acts, and were not exercised in such a manner as to openly outrage public decency, or be injurious to public morals; second, that the intent and purpose charged, unless followed by a public act, does not constitute a public nuisance; third, *that no facts*

*are alleged showing an unlawful abortion;* fourth, *that it is not unlawful to produce an unnecessary abortion, unless the woman is quick with child.* Defendants' counsel insists that the facts alleged do not constitute a crime, because it is not alleged that the abortions were committed upon women quick with child, contending that otherwise producing abortions is lawful. Much of his argument is based upon this assumption, and *he assumes that a necessary element in a violation of Section 1748, B. & C. Comp., defining manslaughter by producing abortion, is that the woman be quick with child,* and this view seems to be quite prevalent. This question has never been before this court for decision, and the writer of this opinion is not able to accept defendants' view. It seems to be an unsettled question whether producing an abortion was an offense at common law, except when the mother was quick with child.''

The court then proceeded to discuss thoroughly the question of whether it was necessary to constitute the crime of manslaughter by abortion that the woman pregnant be quick with child. Deeming a determination of that particular question unnecessary to its decision in the case, the court continued with its discussion without deciding it. It then said:

"The indictment does not attempt to charge a violation of any statute in the procuring of abortions.''

Immediately following that statement, the court took up its discussion of the nuisance statute. ORS 161.310, supra. It then stated:

"And clearly *the acts complained of* in this indictment *are injurious to public morals,* and we conclude that *such acts constitute a nuisance, although not performed in a public place,* or may not disturb the peace or quiet of the community or public. They [the acts of abortion charged] do

openly outrage public decency, and are injurious to public morals, and such is the effect of *the acts charged,* even though not done in a public place, or in view of the public.'' (Italics mine.)

The foregoing statement shows conclusively that this court deemed the acts of abortion charged in the indictment to be the very essence of the public nuisance alleged.

After making the foregoing statement, the court said:

''It is not necessary to allege that *the acts of defendants in producing abortions* were done in cases where the operations or procurements were unnecessary. *The offense relates to a business or condition.* If we had a statute authorizing the procuring of abortions in certain cases, *it might be necessary,* in an indictment in such a case as this, *to negative such exceptions,* but we have no such statute.'' (Italics mine.)

Here the court again stressed the importance of the specific allegations as to abortions contained in the indictment.

Commencing at the bottom of page 535 of 54 Or, the court said further:

''The charge is that the house was maintained with the intent and purpose of willfully, wrongfully and unlawfully producing abortions. *It was not the purpose of the indictment to charge that the intention of the defendants was to commit the crime of killing by producing abortions* under Section 1748, B. & C. Comp. [ORS 163.060—manslaughter statute], but that *they were conducting a business* that openly outraged the public decency and was injurious to public morals, and *the business* with which defendant are charged clearly comes within those terms.'' (Italics mine.)

The *business* referred to was the business of actually performing unlawful abortions as alleged in the indictment.

After the foregoing discussion by the court, we then find the following clear, unequivocal, and positive language in the opinion:

"The allegations of abortion upon Mahala Roberts [Ila Cowles] and other women do not state facts that constitute a crime under Section 1748, B. & C. Comp., and are not intended to, but are only allegations of *acts* done in the performance of the purpose and intent charged, *which are necessary elements of the nuisances,* and do not charge separate offenses: State v. Waymire, 52 Or. 281 (97 Pac. 46)." (Italics mine.)

Could any statement be clearer or more positive? The court emphatically stated that the allegation respecting the abortion upon Mahala Roberts is "a necessary element of the nuisance" charged, as well as the allegation about the performance of abortions upon other women.

The majority meets this positive declaration of the law with the following statement:

"In State v. Atwood, supra, which is cited as a contrary decision, the only question was whether the indictment stated facts sufficient to constitute a crime. 54 Or at p 529. There was no question of sufficiency of the proof. * * * The court was not called upon to decide whether a failure to prove the specific abortion alleged would amount to a failure of proof even though there was substantial evidence that abortions were actually performed by the defendants in the place described and that the house was maintained for that purpose. No such question was presented. The decision, therefore, is not a controlling precedent here."

From what I have quoted from the Atwood opinion above, it is obvious that in that case the court was considering the exact question now before us. In the Atwood case the court was called upon to determine just what constituted the crime alleged in the indictment, and it said directly that the allegations respecting the unlawful abortions were "necessary elements" of the particular nuisance charged. Is that not precisely the same question now before this court?

Moreover, the decision does stand for the proposition that it was essential for the state to prove the unlawful abortions as alleged. When the court said that the alleged abortions were "necessary elements" of the crime charged, that was tantamount to saying that they must be proved. Upon this proposition, the crime involved in this case is no different from any other crime. It is elementary that *in every criminal case the essential or necessary elements of the crime alleged must be proved* or there can be no lawful conviction. The requirement as to proof arises as the necessary result of the language used by the court.

Furthermore, as I shall later point out, the decision in the Atwood case upon the question now under discussion is strictly in keeping with fundamental rules governing pleading and proof in criminal actions.

In *State v. Waymire,* 52 Or 281, 286, 97 P 46, there was involved a prosecution under the nuisance statute. The indictment is rather lengthy and charges a conspiracy, together with specific acts in furtherance thereof, to injure the good name and reputation of the then mayor of the city of Portland. As one of the acts alleged, the indictment charged:

"* * * the said E. E. Radding, in pursuance of the said conspiracy * * * did then and there, upon hearing the said outcry of the said Belle Way-

mire, break and shatter the door of the said Harry Lane's office in said building   *   *   *   ."

Referring to this allegation of the indictment, the court, speaking through Chief Justice ROBERT S. BEAN, said:

"It is claimed that the indictment charges more than one crime, because it alleges that the defendant Radding broke and shattered a door of the prosecuting witness' office; *but this was merely an act committed in pursuance to the general purpose of the conspiracy* and in furtherance thereof, *constituting a part of the crime charged,* and not an independent one.'' (Italics ours.)

The majority gives no satisfactory explanation as to its claim that the above language is not applicable to the instant case. It contents itself with the statement: "But in this respect the case at bar is entirely different, and, *had there been no evidence at all about Ila Cowles,* there still would have been sufficient evidence of the offense charged.'' (Italics mine.) That begs the question. As a reason for not applying the rule in the Waymire case, it simply gives its own ultimate conclusion in this case upon the matter in dispute.

The charge in the instant indictment that an abortion was performed upon Ila Cowles (in the Atwood case, upon Mahala Roberts), was not a charge of an independent crime, but simply "constituted a part of the crime charged.'' Upon this proposition there is no difference whatever between the matter under discussion in the Waymire case and that now under discussion here, and that is why in the Atwood case this court cited the Waymire decision in support of the statement above quoted.

Chief Justice ROBERT S. BEAN was not given to the use of loose language. He was noted for his clear and concise statements upon matters of law. In every

case he meant precisely what his words implied. In the long line of distinguished jurists who occupied this bench in former years, Justice BEAN occupied the foremost position. That is the concensus of opinion of the bench and bar of this state. When he said the specific act alleged constituted a part of the crime charged, that is, a part of the nuisance charged, he meant just that. Being a part of the crime charged, it must necessarily be proved to sustain a conviction.

Reliance is placed by the majority upon our latest decision in *State v. Elliott,* supra. It quotes the following therefrom:

"* * * the gravamen of the charge in the indictment is unlawfully keeping and maintaining a public place for the purpose of *producing* illegal abortions, which act grossly disturbed the public peace and health and openly outraged public decency, being injurious to public morals. The allegations in the indictment respecting conspiracy, abortions, etc., *were merely elements,* incidents, means or circumstances by which the substantive crime was committed and not the substantive crime itself." (Italics mine.)

To support the foregoing statement, the court cited *State v. Atwood,* supra, and quoted therefrom that portion of the decision which I have above quoted, respecting the proposition that the acts of abortion charged were *"necessary elements"* of the nuisance.

The above statement of the court in the Elliott case was made in reply to defendant's contention that the indictment should fail because it charged the crimes of conspiracy to commit a felony, manslaughter by abortion, and an attempt to commit a crime and an assault, for all of which punishment is expressly prescribed by the code. The Atwood decision is the only one referred to in support of the court's statement.

No new law was announced in the Elliott case. The gravamen of the charge in both the Waymire and Atwood cases, as in the Elliott case, was the alleged nuisance. The same is true in this case. And here, as in the other cases, the independent acts charged (the abortions performed) did not charge separate crimes, but simply constituted "a part of the crime charged [public nuisance]" and "are *necessary elements*" thereof. *State v. Atwood,* supra.

It is manifest that if the present opinion of the majority is to be upheld upon the question under discussion, it can be legitimately done only by expressly overruling the Waymire, Atwood, and Elliott cases.

Attention will now be directed to some of the authorities cited and relied upon by the majority, the decisions being by courts in other jurisdictions.

*People v. Hoffman,* 103 NYS 1000, aff. 189 NY 561, 82 NE 1130, is cited and quoted from as follows:

"The offense of abortion is one thing. That of maintaining premises open to the public for the purpose of consummating that crime is another and separate offense against the peace and good order of the state."

That is precisely what we have said, using somewhat different language to express ourselves, in the Atwood and Elliott cases.

Among other things, the indictment in the Hoffman case charged defendant as follows:

"* * * that she received into the house above indicated a large number of women who were with child, and that she used instruments in producing abortions."

The opinion states that there was evidence to support this allegation. It in no way suggests that such evidence was unnecessary.

*People v. Curtis,* 136 NYS 582, aff. 206 NY 747, 100 NE 1131, is also cited by the majority. In that case the defendants were charged with the maintenance of a building for the purpose of committing and performing unlawful abortions therein. As a part of the crime charged, the indictment alleged:

"* * * in that they kept and maintained the building for the unlawful purpose of committing and performing therein unlawful abortions; *that such abortions were performed therein * * *.*" (Italics mine.)

The defendant contended that the case was absolutely barren of any evidence that any act of unlawful abortion was ever committed at this place or that any pregnant women ever resorted to this place for that purpose.

The court answered this contention by pointing out facts and circumstances in evidence by which the allegation concerning abortions might be deemed proved. This discussion by the court indicates very clearly that it deemed the evidence necessary and material. The court found sufficient evidence to sustain the conviction for the crime as alleged.

The majority cites and comments upon the case of *Dennis v. State,* 91 Ind 291. In my opinion, that Indiana decision is directly opposed to the position assumed by the majority upon the question under discussion. In that case it was charged in the affidavit and information "that the defendants at * * *, on * * *, and near the dwelling houses of Joseph Loehr, Noble Warrum and Rufus Scott, and divers other citizens, * * * *unlawfully maintained* * * * *a slaughter-house* * * * *to the injury of Joseph Loehr, Noble Warrum and Rufus Scott,* and divers other citizens being, pass-

ing and residing near their slaughter-house * * *.''
In its instructions to the jury the trial court referred
to ''the health, comfort or property of the said Noble
Warrum or Rufus Scott,'' failing entirely to mention
Joseph Loehr. The defendants contended that ''the
allegations in the affidavit and information, in regard
to the location of the slaughter-house near the resi-
dences of Loehr, Warrum and Scott, and that the
nuisance described was to the injury of Loehr, Warrum
and Scott, were matters of description and must be
proved as charged; and that, therefore, it was error
in the court to instruct the jury * * * that as to
these allegations the State would be entitled to a con-
viction, if the evidence showed * * * the location
of the slaughter-house near the residences *of two of
the three persons named,* and that the nuisance charged
was injurious * * * *to two of the three persons men-
tioned* in the affidavit and information.'' (Italics
mine.) In reply to this contention, the Indiana court
said:

''If counsel are correct in their position that
the allegations referred to are matters of descrip-
tion, then, *although they were made unnecessarily,*
they *must be proved as made,* before the State
could be entitled to a conviction.'' (Italics mine.)

The court held that the specific naming of the three
persons mentioned was an unnecessary allegation, but
having been so alleged and being a matter of descrip-
tion, it had to be proved; and unless proved, the ''vari-
ance will be fatal.'' Because of the omission of Loehr's
name in the instructions, although the other two in-
dividuals were mentioned, error was found, the judg-
ment was reversed, and the cause remanded for a new
trial.

The majority cites and quotes from 2 Wharton, Criminal Evidence 11th ed 1911, § 1090, as follows:

"Where there is an allegation which *describes,* defines, qualifies, or limits a matter material to be charged, it is taken as *a descriptive averment,* and the general rule obtains that *it must be proved as laid, even though such particularity of description* is unnecessary." (Italics mine.)

Clearly that statement does not support the position of the majority in this case. As I shall later point out, the allegation as to the abortion upon Ila Cowles is not only a necessary element of the crime charged (*State v. Atwood,* supra), but it also is highly *descriptive* of the unlawful business in which defendants engaged.

I have no quarrel with the rules stated in Wharton on Criminal Evidence referred to in the majority opinion. In fact, I think they sustain the position which I am taking in this case. However, I do wish to direct attention to what I deem an error in a statement made by the majority. In discussing Wharton on Criminal Evidence the majority states:

"* * * Among other cases cited by the author are several where money alleged to have been stolen was unnecessarily described as 'money of the U.S.', and, the proof failing in this particular, the conviction was reversed. * * * A similar question was involved in State v. Neilon, 43 Or 168, 174, 73 P 321, *though the court found it unnecessary to decide it.*" (Italics mine.)

In my opinion, this court did decide that question and held that in the absence of evidence tending to prove such "unnecessary allegation" the defendant should have been acquitted. The court said:

"The information charges that the money which it is alleged the defendant converted to his own use and failed to pay over was lawful money of the

United States, and it is argued that, *while it was not necessary for the state to have alleged that fact,* it must be proved as alleged. It has been held that, under an indictment charging larceny of lawful money of the United States, it is incumbent upon the prosecution to prove that the money stolen was of the kind and character described in the indictment: [citing cases]. *Within this rule the defendant should have been acquitted* unless the evidence tended to show, either directly or by inference, that the money embezzled by him was lawful money of the United States.'' (Italics mine.)

The court then proceeded to point out the evidence in the record from which the fact of the money involved being lawful money of the United States might be found.

The quotation from Bishop's New Criminal Procedure appearing in the majority opinion is direct authority for the proposition that the allegation in the instant indictment respecting the alleged abortion on Ila Cowles must be proved, or there will be a fatal variance, even though the allegation might be deemed an unnecessary one. An allegation in an indictment may be unnecessary to state a complete crime, but that does not ipso facto render the allegation surplusage. The majority replies to Mr. Bishop with this statement:

''* * * The nuisance consisted of setting up and maintaining a place, specifically designated, together with the necessary equipment, for the performing of abortions and *the actual performing of abortions in that place.* All these things were amply proved.'' (Italics mine.)

That is what the majority says the charged nuisance consisted of in this case, but that is not what the grand jury said in its indictment. It is only a part of what it said. In this respect, who is authorized to speak,

this court, or the grand jury? The nuisance that the grand jury described charged, among other things, a specific abortion upon Ila Cowles as a part of the crime. It is frankly conceded that there is evidence in this record from which it might be inferred that abortions upon other women, names unknown, may have been performed by defendants in the conduct of their business. But that evidence satisfies only one of the allegations of the indictment; it has nothing whatever to do with the question whether such an abortion had been performed upon Ila Cowles.

The majority makes the following statement:

"There are numerous classes of cases in which it is held that failure to prove all that is alleged in the indictment will not stand in the way of a conviction."

The majority then invites attention to indictments for conspiracies where overt acts are alleged in pursuance thereof, to indictments for contributing to the delinquency of a minor, and to prosecutions for obtaining money or property by false pretenses. It might have added indictments for negligent homicide. However, the rules announced in those cases have no application whatever to a prosecution under our nuisance statute where the grand jury or the district attorney must, of necessity, define the particular crime involved by the allegations of the indictment, complaint, or information.

For example, negligent homicide is defined in this state by ORS 163.090, as follows:

"When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any motor vehicle in a negligent manner * * *, the person so driving such vehicle * * * is guilty of negligent homicide * * *."

The gist of this crime is the negligent killing of another in the operation of a motor vehicle. When one or more acts of negligence alleged are established by the evidence as the proximate cause, the crime is complete. It takes but one negligent act, if it be the proximate cause, to constitute the crime; but just as it is in civil actions for damages based upon negligence, several acts may be alleged, and the proof of one or more is sufficient.

That also is true in cases charging an act or acts contributing to the delinquency of a minor. The gist of that crime is the delinquency of a minor and contributing thereto. Such may be accomplished by one act or many acts. If one act is proved that accomplished the result, that is sufficient. *State v. Moore,* 194 Or 232, 239, 241 P2d 455.

I find nothing whatever in the case of *People v. Haynes,* 11 Wend 557 (NY), quoted from by the majority, that supports its conclusion in this case. In that case the principal question for determination was whether in a prosecution for obtaining property by false pretenses (a specific crime defined specifically by statute), it was necessary for the state to prove all the false pretenses alleged in the indictment to warrant a conviction. The court quite properly held that it was not necessary, as proof of one or more of such false pretenses would be sufficient to establish the complete crime. The court said:

> "The statute extends to every case where a party has obtained money or goods by falsely representing himself to be in a situation in which he is not, or by falsely representing any occurrance that had not happened, to which persons of ordinary caution might give credit. *The ingredients of the offence are obtaining goods by false pretences, and with intent to defraud.*" (Italics mine.)

The ingredients of the offense involved in the New York case are specified in the statute; the ingredients of the particular offense charged in this case are not found in any statute, but are found only in the indictment.

The majority quotes a statement from *People v. Townsend*, 3 Hill 479 (NY), which, at first blush, would seem to support its position in this case. However, immediately following the statement of the New York court quoted in the majority opinion, is to be found the following:

"But it is not allowable to depart entirely from the averments, and I think the court should have instructed the jury that *before they could find the defendants guilty,* they must believe that *the injury arose in the particular manner mentioned in the indictment.* As the dam was not in itself a nuisance, the way it became offensive constituted *a part of the substance of the issue,* and *the substance of the issue must always be proved."* (Italics mine.)

Judge Bronson, who wrote the opinion of the court, after making the statements quoted in the majority opinion and in this opinion, said further:

"* * * But here, as the act of the party, to wit, erecting and maintaining the dam, was in itself lawful, the way or manner in which the dam had become a nuisance was a material fact, which should have been proved as laid. If such be not the rule, the defendant can never know what kind of evidence he must be prepared to meet on the trial. Such are my views of this question; but my brethren are of the opinion that the substance of the issue was proved."

The court was comprised of three members, and evidently two of them were of the opinion that the substance of the issue had been proved, although Judge Bronson was not.

To understand the decision, it is necessary that the issues in the case be known. Defendants were charged in the indictment with maintaining a dam across Onondaga creek, by which water flowing in the stream was dammned up, and flowed back in and up the channel of the stream and over the surface of large tracts of adjoining land, "by means whereof the mud, wood, leaves, brush, and the animal and vegetable substances and other filth collected and brought down by the channel of the said water course and by the natural flowing of the waters, there became and were, during all the time aforesaid, collected and accumulated in large quantities in the channel of the water course and on the lands overflowed; and that said mud, wood, etc., so there collected   *   *   *   became and were and still are very offensive and nauseous, and the waters became and are corrupted; and by means thereof divers noisome, unwholesome and deleterious smells and stenches did arise   *   *   *   so that the air was and still is corrupted and infected   *   *   *."

Defendants moved for a directed verdict of not guilty, which motion was denied. They then requested three instructions. The first two requests, relating to the responsibility for the dam by parties defendant and to former jeopardy, were denied, but the third was given. The third only is material to this discussion. The trial court instructed the jury as requested as follows:

"*Third,* the indictment charges the nuisance to consist in erecting and continuing the dam, whereby the mud, wood, etc. *collected and brought down the channel* were collected and accumulated in the channel and on the land overflowed, and became offensive, etc.; and the prosecution must make out the case as stated. The defendants could not be convicted unless the jury believed from the evidence

that the nuisance arose from the decomposition of matter *brought down* the channel, and not from the decomposition of vegetable matter *growing in or about the pond."*

The judgment of conviction was reversed because the defendants were not shown to be the authors of the nuisance, one of the two grounds defendants had urged upon their motion for a directed verdict, and in their requested instructions. *But the court did not criticize the instruction given as above quoted.* From that instruction, it is clear that the trial court stated to the jury that the prosecution was required to "make out the case as stated" in the indictment, and to prove that the nuisance arose in the manner alleged.

Moreover, inasmuch as the case was decided upon the proposition that defendants were not responsible for the nuisance, whatever it consisted of, all the discussion quoted in the majority opinion in this case and in this opinion was dicta unnecessary to the decision, and evidently expressed the views of Judge Bronson only.

The majority cites and quotes from the decision in *State v. Beal,* 94 Me 520, and then states: "We think that the foregoing is ample authority for our decision." In my opinion, it is no authority at all in support of the position taken by the majority. The indictment in the Maine case and that in the instant case have nothing whatever in common, except that both indictments charge a public nuisance. In the Maine case the indictment charged as a public nuisance the location of a particular structure in a public street, describing the size of the building in detail. The evidence showed that a part of the building so described was not located in the street, although a large portion thereof was. Naturally, if any part of the structure encroached upon

the public street, a nuisance existed. That is what the Maine court held. That it did not intend by its decision to upset elementary rules as to pleading and proof in criminal cases is demonstrated conclusively by what it said immediately prior to making the comments it did as quoted by the majority. The Maine court said:

> "It is undoubtedly true, that when a person *or thing* necessary to be mentioned in an indictment is described with even unnecessary particularity, *all the circumstances of the description must be proved;* for they are *all* made essential to the identity, 1 Greenleaf on Evidence, § 65; *and a variance in proof of particulars is fatal,* for proof of identity may depend upon preciseness of description. State v. Noble, 15 Me. 476." (Italics mine.)

No doubt the majority is relying upon that portion of its quote from the Maine decision reading as follows:

> "* * * does the failure to prove the allegation of an offense to the *extent* charged result in a fatal variance between allegation and proof. We think not necessarily. It is laid down by Mr. Wharton in his work on Criminal Evidence, § 145, that failure to prove allegations of *number, quantity* and *magnitude* in their entirety is not a fatal variance, where the proof pro tanto supports the charge." (Italics mine.)

The Maine court is speaking of a situation entirely different from that present in the case at bar. It is speaking of the *substance* of the crime itself—the encroachment of the building upon the public street; *it is not speaking of matters descriptive of the substantive thing.* Its remarks have reference entirely to the *extent* or *magnitude* of the unlawful encroachment, in a case where any encroachment whatever upon the street constituted a public nuisance, and upon proof of which the crime as alleged was complete. That is the basis of its holding.

In construing the indictment in the Atwood case, had this court simply said that "the actual performance of abortions *is* a necessary element of the nuisance charged," there might have been some merit in the claim that the requirement as to proof would be satisfied by proving that abortions generally had been performed, without any proof as to a specific abortion. But that is not what the Atwood case held. Referring specifically to the alleged abortion on Mahala Roberts, and also to the alleged abortions on other women, the court said that *those allegations* (using the plural) *"are necessary elements"* (again using the plural) of the particular nuisances charged, "and do not charge separate *offenses"* (and again using the plural). In other words, the public nuisance as charged by the grand jury, consisted in part of the specific abortions alleged; *they were necessary elements of that particular nuisance.*

The error in the majority's statment that the Maine decision supports its position is shown by reference to a Massachusetts case: *Commonwealth v. Wellington,* 7 Allen 299.

In the Wellington case the indictment charged the wrongful desecration and disfigurement of a public burying ground in Swanzey, which public burying ground was particularly described by metes and bounds, by erecting a shed and maintaining a pen for hogs thereon. The substance of the crime (public nuisance) charged was "the desecration and disfigurement of a public burying ground, by erecting a shed and maintaining a pen for hogs thereon." The evidence on the trial showed that a part only of the land specifically described as the burying ground by a metes and bounds description had actually been used as a public burying ground, but it also showed that *the*

*wrongful acts complained of were committed upon that part so used.*

The defendant contended that the evidence failed to show *that the whole of the lot* (as described by metes and bounds in the indictment) had ever been used, occupied or appropriated as a burying ground, and, therefore, there was a fatal variance between the fact proved and the allegation in the indictment. The trial court instructed the jury that it was sufficient to warrant a conviction, if the evidence established that the lot of land described in the indictment *or some portion of it* was a public burying ground, and that the defendant did within such public burying ground the acts imputed to him. The Massachusetts court said:

"In the application of the general rule that it is sufficient if the *substance* of the issue be proved, there is a distinction between allegations of *matters of substance* and allegations of *matters of essential description.* The former [matters of substance] may be substantially proved; *but the latter* [matters of description] *must be proved strictly and with precision and exactness.* Whenever a person or *thing* necessary to be mentioned in an indictment is *described with unnecessary particularity, all the circumstances of the description must be proved;* for they are essential to its identity. Thus, in an indictment for stealing a black horse, the animal is necessarily mentioned, but the color need not be stated: yet if stated, it is made descriptive of the particular animal stolen, and a variance in the proof of the color is fatal. 1 Greenl. Ev. §§ 56,65.  *  *  *

"It was of course absolutely necessary that the indictment should mention the burying ground [as it was absolutely necessary in the instant case for the indictment to mention the unlawful *business* in which defendants were engaged, that *business* being the public nuisance charged], for the offence

charged against defendant consisted in its dese-cration; but it was not essential that it should be described by metes and bounds. *But it having been so described,* and it being impossible to strike out the whole averment without taking from the indictment the part essential to the allegation of the offence intended to be charged, *it was necessary that the whole description should be proved exactly as it was set forth.* The instructions of the court that the whole need not be proved, but that the defendant might be convicted if it was shown that a part of the lot of land described in the indictment as a burying ground had been used and occupied for that purpose, and that the acts imputed to him had been done by him in that part of the lot, were therefore incorrect, and the exceptions thereto must be sustained." (Italics mine.)

In the instant case the *substance* of the crime charged is *the unlawful business* in which defendants were engaged, necessary, of course, to be mentioned in the indictment. It is patent, therefore, that the independent acts of abortion charged in the instant indictment, being at least *directly descriptive* of the substance of the nuisance alleged, must be proved *exactly as set forth,* even if this court is now unwilling to follow the Atwood case and treat them as necessary elements of the crime charged, and which, as such, would have to be proved.

I wish to invite attention now to some authorities not mentioned or considered by the majority, but which announce definitely the rules as to pleading and proof involved in the instant litigation.

In 14 Ency. of Pleading & Practice 1096, Nuisances § 112, it is said:

"An indictment for the erection or maintenance of a public nuisance should describe the alleged nuisance with certainty, and set forth sufficient facts

to make out a *prima facie* case against the defendant.  *  *  *

"The acts constituting the nuisance should be set out with the detail and fulness usual in indictments.

"*And where a thing is not a nuisance in itself, but becomes so by reason of special circumstances, the special circumstances must be alleged.*

"*Matters of description, though unnecessarily alleged, must be proved as charged.*" (Last italics mine.)

In Clark's Criminal Procedure (Hornbook Series) 214, § 79, it is stated:

"No allegation [in an indictment], though it may have been unnecessary, can be rejected as surplusage, if it is descriptive of the identity of that which is legally essential to the charge."

In *Commonwealth v. Dejardin,* 126 Mass 46, 30 AR 646, defendant was charged in the indictment with printing and publishing obscene pictures of naked girls. The proof showed that he printed and published obscene picture of girls naked only above the waist. The court said:

"The allegation that the defendant printed and published pictures and figures of naked girls is not met by proof that he printed and published pictures and figures of girls, for the greater part clothed. The government, *having described the pictures, is bound by the description,* and the defendant could not be convicted upon proof that he printed and published pictures substantially different from the description, though the jury might find such pictures to be obscene." (Italics mine.)

The rule that descriptive matter in an indictment, although unnecessarily alleged, must be proved as alleged, is a fundamental rule applicable not only in nuisance cases, but also in all other criminal cases. I cite the following cases which illustrate the application of

the rule: *Trice v. State,* 116 Ga 602, 42 SE 1008; *State v. Sherburne,* 59 NH 99; *State v. Noble,* 15 Me 476; *State v. Langley,* 34 NH 529; *Alkenbrack v. People,* 1 Denio 80 (NY); *Gray v. State,* 11 Tex Ct of App 411.

In 46 CJ 820, Nuisances § 488, it is stated:

"On the trial *the proof must accord with the charges* of the indictment, information, or complaint, *and the issues in the case,* and a material variance between the allegations and the proof adduced in support thereof is fatal." (Italics mine.)

Could it logically be contended that the fact of an abortion upon Ila Cowles was not a charge of the indictment and an issue in this case, a very material issue? Did defendants' pleas of not guilty place that question in issue as a fact? Were defendants required to defend against that specific charge as a part of the nuisance alleged? Or could defendants have ignored the specific charge as surplusage and immaterial? Could it have been stricken upon motion of defendants as being immaterial and surplusage? As the much-beloved Justice BELT was so often wont to say: "the answers to these questions are obvious."

In a prosecution for maintaining a public nuisance it is unnecessary to state in the indictment the particular location of the nuisance other than county and state, yet if the particular location is alleged, it must be proved to avoid a fatal variance. The rule is stated in 20 RCL 486, Nuisances § 99, as follows:

"*It is unnecessary,* in a prosecution for keeping and maintaining a common nuisance, *that the indictment* or information particularly *designate the place of the commission of the crime more than to charge that the same was committed within the county and state* wherein the prosecution is had; *but where the information designates the particular location of the place* charged to be kept and main-

tained as a common nuisance, *the state,* to warrant conviction, *must prove the crime to have been committed at the place so particularly described* in the information, as proof of the commission of the crime of keeping and maintaining a common nuisance at a place other than that so designated with particularity in the information is proof of the commission of a separate independent crime other than the one charged in the information.'' (Italics mine.)

As noted in the majority opinion, Mr. Wharton states the same rule. The rule is elementary that ''where there is an allegation which *describes,* defines, qualifies, or limits a matter material to be charged, it is taken as *a descriptive averment''* and must be proved as laid, even though such particularity of description is unnecessary.

In 42 CJS 1267, Indictments and Information § 250, the following rule is stated:

''* * * However, where an allegation is descriptive of the identity of that which is essential to the charge in the indictment, whether it be necessary or unnecessary or more or less particular, such allegation cannot be rejected as surplusage and must be proved * * *.''

In *Hightower v. State,* 39 Ga App 674, 148 SE 300, it is said:

''If the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance. And where there is a necessary allegation which cannot be rejected, yet the pleader makes it unnecessarily minute in the way of description, the proof must satisfy the description as well as the main part, since the one is essential to the identity of the other.''

It must be kept in mind that the defendants are charged by the indictment in this case with conducting an unlawful business, the business of performing il-

legal abortions; it is alleged that their place of business is maintained and operated for that purpose. That is the nuisance charged. Would anyone contend that the charge as to the specific abortion upon Ila Cowles is not *descriptive of the business* conducted by defendants; of their plans and operations which constituted the public nuisance charged by the grand jury in the indictment? Being a specific charge, it certainly is more descriptive of the nuisance alleged than the general charge of abortions upon other women, or the particular place where the business was carried on, but all must be proved.

In *Fulk v. State,* 19 Ind App 356, the affidavit charged a public nuisance in conducting a flour mill in a populous portion of the city, *and alleged that defendant erected and maintained a smokestack of insufficient height to carry away the soot and smoke.* The court held that although it was unnecessary to allege the matters concerning the smokestack, nevertheless, the same having been alleged, it was necessary for the state to prove it. There being a total failure of proof as to that allegation, as there is a total failure of proof in this case as to the abortion on Ila Cowles, the Indiana court reversed the conviction.

In 66 CJS 970, Nuisances § 166a, the following rules are announced:

"In a prosecution for maintaining a nuisance the prosecution *must prove* all the elements of the offense, and introduce evidence to support *all averments* of the indictment or information, *even though such averments are not material, or not necessary to the sufficiency of the indictment;* but the proof need not go beyond the indictment." (Italics mine.)

In 39 Am Jur 452, Nuisances § 181, it is stated:

"In conformity to the rules applicable to criminal pleadings generally, an indictment, * * * for

creating or maintaining a public nuisance must allege all facts necessary to show the commission of the offense, and must not charge more than one offense.''

In support of this statement and in the note thereto, the following comment is made respecting our decision in *State v. Atwood,* supra:

''Where an indictment for maintaining a nuisance by keeping a maternity hospital for abortions charges in connection therewith that the defendants, in such place and on a specified date, 'did wilfully and wrongfully commit and produce an abortion upon one M.R., she the said M. R. then and there being a woman pregnant with child,' and that between certain dates they also did wilfully and wrongfully commit and produce abortions 'upon women then and there pregnant with child, the names and numbers of which women are to the grand jury unknown,' the charges of particular abortions are not statements of fact constituting a crime under a statute relating to manslaughter in committing abortions, but are only allegations of acts done in maintaining the nuisance *and are necessary elements thereof.* Consequently, such indictment does not charge separate offenses. State v. Atwood, 54 Or 526, 102 P 295, 104 P 195, 21 Ann Cas 516.'' (Italics mine.)

From the above, it is observed that the author placed the same construction upon the language used in the Atwood case as has heretofore been expressed in this opinion; that is, that the allegations as to the abortions performed, *including that on Mahala Roberts,* ''are necessary elements'' of the nuisance charged. Being necessary elements, they must be proved. Further, if considered only as *being descriptive of the unlawful business* in which defendants were engaged and charged to constitute a public nuisance, *they must be proved as alleged.*

However, it is highly significant that in all our own cases as well as in the New York cases, supra, the indictments contained allegations that unlawful abortions were actually performed as a part of the nuisance charged. By necessary inference to be drawn from the language used in the New York decisions, and by direct and positive holding of our own court, both jurisdictions stand for the proposition that the actual performance of unlawful abortions is a necessary element of the particular nuisance charged. It is manifest that this necessary element may be alleged generally as it was alleged in the New York cases, or generally and particularly as it was alleged in the instant indictment (and in all other indictments in this state), but when alleged, either generally or particularly, or both generally and particularly, it is elementary that it must be proved as alleged. The majority has not cited, nor have I been able to find, any authority whatever to the contrary.

The holding of this court in the Atwood case that the actual performance of unlawful abortions is a necessary element of the nuisance charged is not without sound reason. *Lawful abortions* may be performed in this state when necessary to preserve the life of the mother (ORS 163.060, manslaughter), or when, in pursuance to the provisions of the Medical Practice Act (ORS 677.010–677.260), it is necessary to preserve her health. *State v. Buck,* 200 Or 87, 262 P2d 495. Suppose that a reputable physician specialized in performing such lawful abortions and maintained an office solely for that purpose. Would anyone contend that he was conducting or maintaining a public nuisance? Certainly not! It is the unlawful character of the abortion performed that makes the place a public nuisance, that shocks the public's sense of decency and morality, and

it is because of that that the unlawful abortions alleged are necessary elements of the particular nuisance charged.

The issue under discussion deals with fundamental rules of pleading and proof in criminal cases. I think that in its decision, the majority is turning its back on elementary principles. If this case only were affected by its holding, that would be bad enough, but, of course, that is not the extent of the damage being done. This holding today upon the question of pleading and proof will, like Banquo's ghost, arise to haunt us in future criminal cases. Not one authority is cited in the majority opinion which directly supports its position that it was unnecessary in this case to prove the specific charge that an unlawful abortion was performed upon Ila Cowles. In my opinion, upon the law applicable to pleading and proof in criminal cases, the majority in this case stands alone. A new precedent is being established, entirely foreign to anything that has been said before.

It is unfortunate that the matter in dispute arises in a case of this character. All good citizens condemn the abortion racket. It long has been a foul stench in the nostrils of the body politic. Its complete eradication is demanded by every sense of morality and decency. However, it must be eradicated in keeping with the rules of law. Ours is a government by law, and it is the primary function of the court to see that the law is followed, even though in its application a guilty one may occasionally escape punishment. We cannot make or change the law to fit each individual case as it arises. If we did, we soon would have chaos instead of an orderly administration of justice. Bad cases make bad laws, and as Burke said: "Bad laws are the worst sort of tyranny." Regardless of how we may feel as to

the ultimate guilt of defendants in this case; our duty as an appellate tribunal concerned only with matters of law is plain. In the opinion of the majority, the state should have been permitted to prove the alleged abortion on Ila Cowles; in my opinion, it was required to do so. The judgment against all defendants should be reversed and the cause remanded for a new trial.

LATOURETTE, J., authorizes me to say that he joins in this dissenting opinion.