he has reasonable doubt as to the correction of the law laid down by the court. People v. Emerson, 6 N. Y. Cr. 157 ; 20 S. R. 15 ; 5 Supp. 374. But the justice ought not to interfere and interpose a stay, if only a remote doubt exists in regard to the admission of some unimportant piece of evidence. Id.

Upon an application for a certificate under this section, it is not necessary to reach a conclusion as to whether the judgment would be affirmed or reversed upon a full consideration of the case and the bill of exceptions. People v. Wentworth, 3 N. Y. Cr. 113. The pertinent inquiry is, was there anything done on the trial which raises a reasonable doubt whether the judgment should stand ? Id. A doubt whether a ruling of the court upon the trial was sufficiently broad to take from the jury the consideration of clearly incompetent evidence, constitutes such reasonable doubt as to whether the judgment should stand as to authorize a stay of the execution of the judgment. Id.

Filing.—If the certificate, specified in this section, is given, it may be filed with the notice of appeal. Id.

Through it is not in terms provided in § 527, or in § 529, post, that an application to one judge only shall be made for a certificate, these sections do not in terms authorize applications to be made to several and successive judges. People v. McKane, 7 Misc. 371 ; 59 S. R. 302 ; 28 Supp. 175. A defendant under conviction for a felony, is not entitled to submit an application for a certificate, mentioned in this section, until such notice as the judge may prescribe has been given, to the district attorney of the county where the conviction was had, of the application of the certificate. Id.

Where the court has a reasonable doubt of the validity of certain proceedings had in a case, a certificate of reasonable doubt, to stay the judgment, pending appeal under this section, will be granted. People v. McLoughlin, 13 Misc. 287 ; 69 S. R. 252.

---

# Court of Appeals.

### March 2, 1897.

## PEOPLE EX REL. JOSEPH STURGIS *v.* JOHN FALLON, Prison Warden.

1. CRIMINAL LAW—GAMING.

> A clerk, who attends his employer on a race track, and records in a book bets which his employer makes on the races, but makes no bets himself, is not guilty of violating either §§ 351 or 343 of the Penal Code.

2. SAME.

> Acts, mentioned in § 17, c. 570 of 1885, and punishable as therein provided to the exclusion of any other penalty or punishment, are excepted from the operation of § 351 of the Penal Code.

3. STATUTE—CONSTITUTIONAL.

Where an act is in a degree appropriate to accomplish the result for which it was intended, the court cannot condemn it as invalid or un constitutional because, in its opinion, some effective or more appropriate law might have been devised and enacted.

4. SAME.

Section 9, article 2 of State Constitution was not intended to be self-executing.

5. SAME.

Where the act is forbidden by the legislature and the statute provides a penalty or forfeiture for a disregard of it, the determination of the degree of punishment or the extent of the penalty is vested in the legislature and not in the courts.

6. SAME.

Section 17, c. 570 of 1895 is not in conflict with § 9, article 1 of State Constitution, and is constitutional and valid.

John D. Lindsay and Benjamin Steinhardt, for appellant.

De Lancey Nicoll, for respondent.

MARTIN, J.—The relator was charged by an information filed with one of the magistrates of the city of New York with a violation of section 351 of the Penal Code, in that on October 24, 1895, at the private grounds of the Westchester Racing Association, in the city of New York, he engaged in poolselling and bookmaking, and occupied and used a certain place, with books, apparatus, and paraphernalia, for the purposes of recording and registering bets and wagers. Upon the examination before the magistrate, it was shown that on that day he was upon the grounds of the association with one Orlando Jones, by whom he was employed as clerk. He and Jones, who attended the race for the purpose of making wagers according to his judgment, walked about the grounds together, the latter making bets on the races then in progress, with persons with whom he was acquainted; and the relator, at his direction, entered such bets on sheets of paper belonging to Jones, which were conveniently ruled for that purpose. The prosecution called Jones as a witness, who testified to the distinction between bookmaking and what was done on that occasion. He was admitted to the grounds without charge, as he was the owner of a horse entered for the races, but the relator paid for his admission.

Neither Jones nor the relator had any desk, stand, chair, rest, or support of any kind, nor did they occupy any booth, tenement, building, or part thereof, or any particular spot upon the grounds. Nor did either exchange any money with any person making a wager with Jones, or exchange, deliver, or transfer to any one with whom a wager made, any record, memorandum, or document of any kind, or subscribe, by name, initials, or otherwise, any record, registry, or memorandum in the possession of another of any bet or wager, to be retained by such other or any person as evidence of a bet or wager. No odds were posted, money exchanged, or memorandum of any kind received, delivered, or transferred. Upon these facts the magistrate decided that the relator had violated section 351 of the Penal Code, and held him to answer therefor. A writ of habeas corpus was then obtained, and also a certiorari to review the decision of the magistrate. Upon the hearing in the court of oyer and terminer, the relator was discharged.

As the propriety of the decision in this case is largely, if not wholly, dependent upon the validity of section 17 of chapter 570 of the Laws of 1895, which is claimed by the appellant to be unconstitutional and void, it may be well, at the threshold of this examination, to refer to the provision of the constitution with which it is said that that section of the statute is in conflict. Section 9 of article 1 of the constitution of the state declares: "Nor shall any lottery or the sale of lottery tickets, pool selling, bookmaking, or any other kind of gambling hereafter be authorized or allowed within this state, and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section." In May, 1895, the legislature, with the ostensible, if not the actual, purpose of complying with this command of the constitution, passed several statutes relating to these subjects, being chapters 570–573 of the laws of that year. Chapter 570 is an act for the incorporation of associations for the improvement of the breed of horses, to regulate the same, and to establish a state racing commission. It provides for the incorporation of such associations, for the payment of their capital stock, and makes other provisions, to which it is unnecessary to refer at this time. It then provides that such corporations, upon complying with the provis-

ions of that act, shall have the power and right to hold one or more trotting or running race meetings in each year, and to hold, maintain, and conduct trotting or running race meeting; that at such meetings the corporation, or the owners of horses engaged in such races, or others who are not participants therein, may contribute purses, prizes, premiums, or stakes to be contested for; that no such person other than the owner of a horse contesting in the race shall have any pecuniary interest in the prize, or be entitled to receive any portion thereof after the race is finished, but the whole shall be allotted in accordance with the terms and conditions of the race. It then provides for a state racing commission, defines its duties and powers, and makes other provisions which need not now be considered. Then it declares: "Sec. 16. All racing or trials of speed between horses or other animals for any bet, stake or reward, except such as is allowed by this act, or by special laws, is a public nuisance; and every person acting·or aiding therein, or making or being interested in such bet, stake or reward is guilty of a misdemeanor; and in addition to the penalty prescribed therefor he forfeits to the people of this state all title and interest in any animal used with his privity in such race or trial of speed, and in any sum of money or other property betted or staked upon the result thereof." Then follows the section which the appellant claims to be unconstitutional, which reads: "Sec. 17. Any person who, upon any race course authorized by or entitled to the benefits of this act, shall made or record, directly or indirectly, any bet or wager on the result of any trial or contest of speed or power of endurance of horses taking place upon such race course, shall forfeit the value of any money or property so wagered, received or held by him, to be recovered in a civil action by the person or persons with whom such money or property is deposited. This penalty is exclusive of all other penalties prescribed by law for the acts in this section specified, except in case of the exchange, delivery or transfer of a record, registry, memorandum, token, paper, or document of any kind whatever as evidence of any such bet or wager, or the subscribing by name, initials or otherwise, or any record, registry, or memorandum in the possession of another person of a bet or wager, intended to be retained by such other person or any other

person as evidence of such bet or wager." Chapter 571 amends section 343 of the Penal Code, which makes it a misdemeanor to keep a gaming and betting establishment, while chapter 572 amends section 351 of the Penal Code so as to read: "Sec. 351. Any person who engages in poolselling, or bookmaking, at any time or place; or any person who keeps or occupies any room, shed, tenement, tent, booth or building, float or vessel, or any part thereof, or who occupies any place, or stand of any kind, upon any public or private grounds, within this state, with books, papers, apparatus or paraphenalia, for the purpose of recording or registering bets or wagers, or selling pools, and any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election; or upon the result of any lot, chance, casualty, unknown or contingent event whatsoever; or any person who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person, or sells pools, upon any such result; or any person who, being the owner, lessee or occupant of any room, shed, tenement, tent, booth or building, float or vessel, or part thereof, or of any grounds within the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or becomes the custodian or depositary for gain, hire or reward, of any money, property or thing of value, staked, wagered or pledged, or to be wagered or pledged upon any such result; or any person who aids, assists or abets in any manner in any of the said acts, which are hereby forbidden, is guilty of a felony, except when another penalty is provided by law, and upon conviction is punishable by imprisonment in the state prison for a period of not less than one year, nor more than two years, or by such imprisonment, together with a fine not exceeding two thousand dollars. When an exclusive penalty is provided by law for an act hereby prohibited, the permitting of the use of premises for the doing of the act in such case shall not

be deemed a violation hereof, or of section 343 of this Code." Chapter 573 has no important bearing upon the question before us.

This examination of the statute discloses that the legislature has passed laws, the obvious purpose of which is to prevent the offenses mentioned in section 9 of article 1 of the constitution. Under the statutes thus passed, all the offenses there named are made felonies or misdemeanors, with the single exception that a person who, upon a race course and at a race authorized by chapter 570, shall make or record a bet or wager on the result of a contest taking place thereon, shall forfeit the value of the money or property so wagered, to be recovered in a civil action by the person with whom such wager is made, or by whom such property is deposited; and this penalty is made exclusive of all others, unless in certain excepted cases mentioned. Under these circumstances, two questions are presented for consideration: (1) Whether the acts alleged and proved to have been performed by the relator were such as to fall only within the provisions of section 17 of chapter 570 of the Laws of 1895, and consequently, did not constitute a crime; and, if so, (2) whether that section is in conflict with the provisions of the constitution.

A careful study of the various statutes involved, and of the evidence contained in the record, leads to the conclusion that the only acts of which the relator was proved guilty were those described in section 17, and that he was not proved to have committed any act which would constitute any of the other offenses mentioned in those statutes. It is manifest that it was the relator's purpose to keep within the provisions of that section, and to avoid any offense whereby he would incur any other penalty. Plainly, he was not a keeper of a betting or gaming establishment, or guilty of violating any of the provisions of section 343 of the Penal Code, which forbids the keeping of such establishments. Nor do we think he was engaged in bookmaking or poolselling, which is made a crime by section 351, unless possibly to the modified exten+ described in section 17, as recording a bet or wager, for which the forfeiture of an amount equal to the value of the money or property wagered is the penalty prescribed. If the acts which he performed were only such as fell within the

provisions of the latter section, whether denominated " bookmaking," or "making a record of a bet," is of little moment. If it be held that they constitute what might perhaps be called "bookmaking," yet, as they consisted only of the acts mentioned in that section, and are punishable as therein provided to the exclusion of any other penalty or punishment, they are excepted from the operation of section 351 of the Penal Code, as that section expressly excepts from the punishment thereby provided for all the offenses mentioned whenever another penalty is provided by law. While the appellant scarcely contends that the relator was shown to be guilty of poolselling, yet it is insisted that he was guilty of bookmaking, and punishable under the provisions of section 351. We think it is clear that there was no evidence before the magistrate upon which the relator could be properly held for the offense of poolselling. As has already been intimated, it is not of much consequence whether the acts of the relator be denominated "bookmaking," or called by some other name. It seems to us that the one important inquiry in relation to this branch of the case is whether the acts of the relator were punishable only in the manner prescribed by section 17, and consequently excepted from the provisions of section 351 of the Penal Code. That the relator was upon a race course authorized by, and entitled to the benefit of the provisions of, chapter 570, that he made or recorded a bet on the result of the contest, taking place thereon, and that he did none of the things mentioned in the last paragraph of that section, are practically undenied. Therefore, that the acts performed by the relator were only those for which, by section 17, the penalty prescribed was a forfeiture of an amount equal to the bet, and as to which it was provided that a civil action to recover it should be the exclusive remedy, must be regarded as established. Such being the case, it follows that, by whatever name the acts of the relator may be described, the only punishment which could be inflicted was that provided by that section, if valid.

It is, however, persistently urged that section 17 is void, as being in contravention of the provisions of the constitution relating to that subject. Without indulging in any refined or subtle discussion or consideration of the question as to what may or may not fall within the terms " poolselling, " " bookmaking, " or other kinds of gambling which, under the constitution, may not be

authorized, and in relation to which the legislature is charged with the duty of passing appropriate laws to prevent, it is manifest that the legislature regarded acts of the character of those performed by the relator as falling within its condemnation. Hence we must assume that his acts were in conflict with the spirit and purpose of the constitution. In pursuance of its mandate, the legislature has enacted a law which forbids such acts, and prescribes as a penalty that a person making a bet or record of it, at the place and in the manner named, shall forfeit an amount equal to the value of the property or sum wagered. Whatever its indirect effect may be, it certainly cannot be said that this was a statute which in terms authorized any of the forbidden acts. The most that can be said is that, when the legislature passed that section of the statute, its effect was to reduce the then existing penalty or punishment for that particular offense. The authority to prescribe the punishment for the offenses mentioned in that provision of the constitution is expressly conferred upon the legislature, which necessarily included a delegation to it of the power and authority to increase or decrease the punishment for offenses of that character to such an extent as the legislature deemed proper. It is not within the province of this court to declare that section 17 is in contravention of the constitution, for the reason that it does not deem the provision adopted appropriate or sufficient to prevent such offenses. The constitution, in express terms, reposed in the legislature the power, and imposed upon it the duty, of passing such laws, thus clothing it with the right to consider and determine for itself what laws were appropriate and should be passed to carry it into effect. That the law under consideration is, in a sense, appropriate to accomplish the purpose of that provision, must be admitted. Whether it will prove less effective to accomplish that result than some other, we are not called upon to determine. It being in a degree appropriate, we are aware of no principle of constitutional law which would authorize this court to condemn it as invalid or unconstitutional because, in our opinion, some more effective or more appropriate law might have been devised and enacted. So long as this legislature was in any degree appropriate to carry into effect the purpose of the constitution, it does not fall under its condemnation. That this provision of the

constitution was not intended to be self-executing is manifest, as it expressly delegates to the legislature the authority, and requires it, to enact such laws as it shall deem appropriate to carry it into execution. The contention of the appellant that the purpose of the enactment of section 17 was to evade or defeat the provisions of the constitution is not proved, and cannot be presumed, but a contrary presumption must prevail. Presumably, the purpose was laudable and proper, such as the legislature deemed best for the proper and efficient accomplishment of the purpose of the constitution, and no contrary presumption will be indulged in by this court. In the language of Allen, J., in People v. Albertson, 55 N. Y. 50, 54: "Courts do not sit in review of the discretion of the legislature, or determine upon the expediency, wisdom, or propriety of legislative action in matters within the power of the legislature. Every intendment is in favor of the validity of statutes, and no motive, purpose, or intent can be imputed to the legislature, in the enactment of a law, other than such as are apparent upon the face, and to be gathered from the terms, of the law itself." As was said by Denio, C. J.: "The courts cannot mpute to the legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express works, or by necessary implication, the judges cannot listen to a suggestion that the professed motives for passing it are not the real one." People v. Draper, 15 N. Y. 532, 545. While, under that provision, the legislature would have no power to enact laws permitting those offenses, or which in terms protected persons guilty of them from punishment, yet where, as in this case, the act is forbidden by the legislature, and the statute provides a penalty or forfeiture for a disregard of it, the determination of the degree of punishment or the extent of the penalty is vested in the legislature, and not in the courts. Without further discussion, or considering the question whether the legislation under consideration was or not best calculated to accomplish the design of the constitution, we are of the opinion that section 17 was not in conflict with section 9 of article 1, and hence is constitutional and valid. Treating section 17 as valid, and construing section 351 of the Penal Code in connection with it, it at once becomes obvious that the relator was not guilty of any offense under that

section for which he was liable to the arrest which he suffered, and from which he was discharged.   The orders of the appellate division were proper, and should be affirmed.

All concur.

Orders affirmed.