(118 App. Div. 862)

## PEOPLE v. HOFFMAN.

(Supreme Court, Appellate Division, First Department. April 19, 1907.)

.NUISANCE—PUBLIC NUISANCE—WHAT CONSTITUTES.

Pen. Code, § 385, defines a public nuisance to be a crime against the order and economy of the state, consisting of unlawfully doing· an act which (1) annoys, injures, or endangers the comfort, repose, health, or safety of any considerable number of persons, or (2) offends public decency. Section 294 makes abortion a crime of a higher character. *Held,* that the keeping of a house for the purpose of practicing there the vocation of an abortionist constitutes a public nuisance.

Appeal from Special Term.

Elise Hoffman was convicted of maintaining a public nuisance, and she appeals. Affirmed.

·Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

August P. Wagner, for appellant.
E. Crosby Kindleberger, for the People.

LAMBERT, J. The defendant was charged with maintaining a public nuisance under the provisions of sections 385 and 387 of the Penal Code. An examination of the record shows that there was a fair trial, and that the judgment of conviction rests upon sufficient and competent evidence of the facts set forth in the information. The appellant insists that no crime under section 385 of the Penal Code was stated in the information, and that therefore the motions on the opening and closing of the case and in arrest of judgment should have been granted. This seems to be the only question requiring consideration. The section of the Code concerned, so far as it is involved on this appeal, defines a public nuisance to be:

"A crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission (1) annoys, injures. or endangers the comfort, repose, health or safety of any considerable number of persons; or (2) offends public decency."

The facts set forth in the information and supported by the evidence show that the defendant advertised in the public newspapers of the city of New York to the effect that she cured "irregularities, or no charge; longest cases; ladies boarded; 213 East 78th street"; that she. received into the house above indicated a large number of women who were with child; and that she used instruments in producing abortions. There is no attempt to dispute that the defendant made admissions of this character to the witnesses called by the people; but it is urged on the part of the defendant that, as section 294 of the Penal Code makes abortion a crime of a higher character, there was no jurisdiction in the trial court of the offense charged as a public nuisance.

Great reliance is placed upon the fact, in support of this contention, that no adjudicated case has been found in which it has been held that the maintaining of a house for the purpose of practicing the vocation of an abortionist constitutes a nuisance. It is true, as a general proposition, that if a house is so kept that no one outside of its inmates

is disturbed, annoyed, or corrupted in their morals, it is not in law a disorderly house. The annoyance or corrupting influence must reach beyond the inmates and affect the public peace or morals of the community. 1 Bishop on Criminal Law, § 1051. But the same author says that this doctrine should—

"not be so applied as to exempt any man from indictment whose house is practically set open to the public, alluring the young and unwary into it for the purpose of their indulging in anything corrupting to their virtue, sobriety, or general good morals. If a man would shield himself from indictment when he allows wicked and corrupting practices within his house, he should keep his doors, while those practices are carried on, closed to the outer world." Section 1053.

Again this same learned author says:

"If a house is of common resort for the commission of petty offenses against the laws, such as offenses punishable by fine, it is indictable on this ground, though not otherwise disorderly." Section 1055.

In the following section he declares that this principle is as old as the law itself, and that:

"A man who holds out inducements for people to congregate, and together commit violations of a statute, not only lends the concurrence of his will to their wrongful acts, but also does what most powerfully tends to disrobe the body politic of her virtue, and of the drapery of that order which the hand of government has thrown around her."

In section 1057, he continues:

"To bring a case within this principle, the particular acts must be either indictable, or in some sense unlawful. Therefore the English court quashed an indictment which charged one with converting a house into a hospital for taking in and delivering lewd, idle, and disorderly unmarried women, 'who, after their delivery, went away, and deserted their children, whereby the children became chargeable to the parish.' 'By what law,' asked Lord Mansfield, 'is it criminal to deliver a woman when she is with child?'"

In this there is a clear intimation that the indictment would have been good, had it charged that the house was used for the crime of abortion, rather than the lawful delivery of children.

Construing the provisions of the Penal Code under which this charge is made in the light of the common law, it is only a just construction to hold that the broad language used embraces the offenses of the common-law rule. As before seen, the section defines a nuisance to consist in unlawfully doing an act which annoys, injures, or endangers the comfort, repose, health, or safety of any considerable number of persons, or offends public decency. This surely is as broad and inclusive in terms as the rule of the common law, which has been made the subject of the Code provisions. At common law it would have been, and under the Code provisions it is, a nuisance for a person by public advertisement to invite and receive a class of the public to his premises for the purpose of violating the laws of the state, as was done in this case. This, in our opinion, constitutes "crime against the order and economy of the state" by offending "public decency." It is the duty, therefore, of this court, in accord with law, to sustain this conviction. The offense of abortion is one thing. That of maintaining premises open to the public for the purpose of consummating that crime

is another and separate offense against the peace and good order of the state. It is an inducement to moral laxity and to crime, and is within the letter and spirit of the sections of the Penal Code here under consideration.

No errors prejudicial to the defendant appearing in the record, the judgment of conviction is affirmed. All concur.