HIRAM BEACH, Plaintiff, *v.* QUEENS COUNTY JOCKEY CLUB, a Corporation, Defendant.

Supreme Court, Special Term, Queens County, September 15, 1937.

*Jacob J. Lesser*, for the plaintiff.

*Davies, Auerbach & Cornell [Joseph S. Auerbach, Martin A. Schenck* and *William J. Carr* of counsel], for the defendant.

HOOLEY, J. The plaintiff brings this action to enjoin the defendant from permitting betting and the recording of bets at defendant's race track and in such action he is asking this court to issue a preliminary injunction. Defendant makes a cross-motion to dismiss the complaint upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

The plaintiff alleges in his complaint that the defendant conducts a race track and has set aside a portion of its premises under the grand stand, commonly known as the betting ring, in which ring it permits some fifty bookmakers to accept, register and record wagers and bets upon the outcome of the horse races. The names of approximately seventy bookmakers so engaged are set forth in the complaint and it is alleged that more than 5,000 people participate in the betting. The transaction of betting, as it is claimed to exist, is described. The betting is alleged to be in contravention of the Constitution of the State of New York and also sections 1133, 1134, 1135 and 1141 of McKinney's Unconsolidated Laws of the State of New York and sections 973, 986 and 991 of the Penal Law of the State of New York. It is alleged that the illegal acts complained of constitute a public nuisance offensive to public decency and annoy and injure the comfort, repose, health and safety of a great number of persons and tend to a breach of the peace. The complaint also alleges that the damages to plaintiff are and will be of such a nature and extent that it is impossible for any court of law to define the same and that he has no adequate remedy at law. In his moving papers the plaintiff sets forth his efforts and inability to get relief from the Racing Commission of the State of New York.

No answering or opposing affidavits are submitted by defendant and, therefore, for the purposes of both motions plaintiff's allegations in the complaint must be assumed to be true and in the matter of the application for a temporary injunction the averments in his affidavits must be assumed to be true.

There are, therefore, no questions of fact before the court but merely questions of law.

Section 9 of article 1 of the Constitution of the State of New York provides in part as follows: " Nor shall any lottery or the sale of lottery tickets, pool selling, book making or any other kind of gambling hereafter be authorized or *allowed* within this State; and the Legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

The Legislature in enacting sections 986 and 991 of the Penal Law has carried out the constitutional mandate of passing laws against gambling and one section has made the violation of the same a misdemeanor *except when another penalty is provided by law.* (Penal Law, § 986.) In section 17 of chapter 440 of the Laws of 1926, as added by chapter 233 of the Laws of 1934, it was provided in effect that the penalty for betting on horses at the race track is the recovery of the amount wagered in a civil action and that such penalty is exclusive of all other penalties provided in the various sections of the Penal Law.

From the foregoing it is clear that betting on horses at race tracks is illegal and unlawful and forbidden in the State of New York, and that at the defendant's race track, in contravention of the Constitution and laws of the State of New York, illegal betting is carried on openly notwithstanding the notices or placards placed there pursuant to the provisions of section 1133 of the Unconsolidated Laws which notices call attention to the fact that no gambling is permitted and quote section 986 of the Penal Law, and notwithstanding the fact that section 1134 of the Unconsolidated Laws makes it the duty of the special policemen at such race tracks to prohibit gambling and make arrests in case of such violation.

This court is well aware that its function is to interpret the law and not to make it, and that in such interpretation it must not by judicial legislation bring about a result which the legislators did not have in mind. The theory of our government is still along the lines of the division of the same into three parts, the legislative, the executive and the judicial, with neither seeking to impose its will upon the other. The Court of Appeals, in *People ex rel. Sturgis* v. *Fallon* (152 N. Y. 1), some forty years ago, in discussing this subject of betting at race tracks and the allegedly insufficient penalties provided therefor, reminds us that it is not the province of the court to question the wisdom or the propriety of the motives of the Legislature in enacting a statute, but it is the duty of the court to assume that the motive behind the enactment was proper and worthy. This court heeds the admonition. It does not presume to question the propriety of the motives behind all of these legislative enactments respecting betting on horses at the race tracks but it considers it to be its duty to face the facts in an open and honest manner. The man on the street is expected to honestly observe the laws. He has a right to expect from the legislators who make the laws and the courts which interpret them an equal honesty of purpose, intention and action.

The Constitution of the State now and for many years has provided that no kind of gambling shall be authorized or allowed within

this State and the Legislature is required to pass appropriate laws to prevent such offenses. The Legislature passed such laws but it made the only penalty for violation thereof the forfeiture of the amount wagered in a civil action. No person may be arrested for violation thereof although the Penal Law is violated. The enactments aforesaid have not prevented gambling at the race track. The defendant makes no denial of the charges in the moving papers that gambling exists at the race track and that thousands participate in such gambling. It is fair to assume that even the members of the Legislature have in some manner become acquainted with the fact that gambling which is prohibited by our Constitution and by our statutes flourishes in the State in connection with betting on horse races at the race tracks. And if no greater penalty has been provided it is no doubt because in the passage of time the trend of thought in this State toward gambling at the race tracks is somewhat different from that which existed at the time such constitutional provision was adopted. If that be true, that constitutional provision should be eliminated at once so that a Legislature fettered by its provisions but apparently seeking to give effect to the current trend of public opinion may not be charged at the bar of this court with pretense and sham and legal subterfuge in enacting our laws.

The defendant urges upon the court that portion of section 986 of the Penal Law which provides in substance that when an exclusive penalty is elsewhere provided by law for an act thereby prohibited, the permitting of the use of premises for the doing of the act in such case should not be deemed a violation thereof nor of section 973 of the Penal Law. The defendant maintains that such provision of the statute clearly indicates that its permission for the use of its land by bookmakers for the purpose of making and recording bets can in no manner be construed to be a violation of either sections 973 or 986 of the Penal Law. There can be no argument on this point, but the plaintiff in this action is not proceeding upon the theory that this defendant has violated either of the sections above mentioned. The plaintiff's theory in this action, which is, to say the least, original and interesting, is that the bookmakers, not the track owner, are violating the law, and that what the defendant track owner is doing is to permit its premises to be used for the doing of acts forbidden by law, and plaintiff asserts that such acts constitute a public nuisance.

The Legislature of this State has declared the policy of this State as respects bookmaking and betting at horse races conducted under the State Racing Commission. This policy has been in effect more than forty-two years. This policy has received the tacit

approval of our courts during all this time, it having been held that the enactments of the Legislature which made the recovery of the amount wagered in a civil action the exclusive penalty was not unconstitutional (*People ex rel. Sturgis* v. *Fallon, supra*), and it having been further held that no criminal prosecution for bookmaking or betting at the race tracks was permissible, and this is so even though the effect of said legislative action has been to permit gambling at horse race tracks in the face of the constitutional provision.

The provisions of the Constitution respecting gambling are not self-executing. Enforcing acts by the Legislature are necessary. An examination of such acts indicates a legislative intent that gambling at race tracks should not be considered in the same class as other forms of gambling. It may be said that such gambling is unlawful but not punishable as a crime.

While the matter of bookmaking and betting has been before the court on a number of occasions, it has usually been in connection with the attempt to punish the bookmaker in the criminal courts. Never before have the courts of this State had before them the question whether wholesale bookmaking and betting at the race track constitutes a public nuisance.

Section 1530 of the Penal Law defines a public nuisance. It provides in part as follows:

" A public nuisance is a crime against the order and economy of the State and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1 Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or,

" 2 Offends public decency."

In *People ex rel. Collins* v. *Cahalan* (28 N. Y. Cr. 377) Chief City Magistrate McADOO said: " That a house in which gambling is habitually carried on or in which gaming or gambling for money or other valuable things is permitted with more or less frequency, is a public nuisance, is settled beyond controversy in numerous decisions in this and other States, and that such a house is, *per se*, a public nuisance offending public decency."

In *McClean* v. *State* (49 N. J. L. 471; 9 A. 681) the Court of Errors and Appeals of New Jersey held that though a statute on betting on horse racing had been repealed and it was not then a criminal offense, yet inasmuch as it was unlawful, the keeping of a place for betting upon horse races constituted a public nuisance.

In *People* v. *Vandewater* (250 N. Y. 83) the subject of public nuisance has received an exhaustive examination. That was the case that held that a place for trafficking in liquors was a public

nuisance although there was no violation of the State law but only a violation of the Federal law. The opinion therein, reviewing the common law, states: " ' All disorderly inns or alehouses, bawdy houses, *gaming houses*, stage plays, unlicensed booths and stages for rope-dancers, mountebanks and the like are public nuisances, and may upon indictment be suppressed and fined ' (4 Blackstone's Commentaries, p. 167). So it was said in *Commonwealth* v. *McDonough* (95 Mass. 581): ' Brothels and *gaming houses* were held to be nuisances under all circumstances; but alehouses were not, unless they became disorderly.' (See, also, *State* v. *Bertheol*, 6 Blackford [Ind.], 474; *Sopher* v. *State*, 169 Ind. 177.) "

In *People* v. *Hoffman* (118 App. Div. 862; affd., 189 N. Y. 561) the court said: " At common law it would have been, and under the Code provisions it is, a nuisance for a person, by public advertisement, to invite and receive a class of the public to his premises for the purpose of violating the laws of the State, as was done in this case. This, in our opinion, constitutes ' crime against the order and economy of the State ' by offending ' public decency,' " and in the same case the court quotes from Bishop on Criminal Law, section 1056, as follows: " ' A man who holds out inducements for people to congregate, and together commit violations of a statute, not only lends the concurrence of his will to their wrongful acts, but also does what most powerfully tends to disrobe the body politic of her virtue, and of the drapery of that order which the hand of government has thrown around her.' "

The plaintiff makes out a strong case on his claim that a place maintained for the habitual violation of the laws of the State is a public nuisance and that the daily public participation by thousands of people in acts at defendant's race track which are forbidden by the Constitution of the State and the penal laws of the State breeds disrespect for all law and offends public decency and, therefore, constitutes a public nuisance.

However, it is not necessary to decide that the acts permitted at the defendant's race track do constitute a public nuisance because notwithstanding the views herein expressed, the plaintiff's position suffers from an insuperable infirmity which goes to the jurisdiction of this court.

The plaintiff does not show any special damage. His relation to the practices at defendant's race track is no different from that of any other citizen.

It is well settled that special damages from a public nuisance must be proved before relief in equity will be afforded to a plaintiff. (*Van Cortland* v. *New York Central R. R. Co.*, 265 N. Y. 249.) And in *City of Yonkers* v. *Federal Sugar Refining Co.* (136 App.

Div. 701) the Appellate Division of the Second Department said: " A nuisance which is exclusively common or public cannot lawfully be abated *at* the suit in equity of any private individual or corporation. The remedy is by indictment or criminal prosecution or, under some circumstances, by an action in equity on behalf of the sovereign power, either through the Attorney-General or some other agent to whom the sovereign power has been delegated."

For the foregoing reasons the complaint of the plaintiff is dismissed for failure to state facts sufficient to constitute a cause of action and the motion made by plaintiff for a restraining order is denied.