Philip J. Weiss
(Genesee County Judge and Acting Judge for Niagara County). Section 9 of article I of the New York State Constitution was amended, effective January 1, 1958. Subdivision 2 was added and, as a result, the playing of a game commonly known as “ bingo ” was legalized in any city, town or village of the State upon the approval of a majority of the qualified electors of the municipality. In accordance with the terms of such amendment, the playing of the game in such cases was subject to certain restrictions to be incorporated in legislation to be adopted by the State Legislature.
The State Legislature passed a “Bingo Licensing Law ” which was embodied in article 14-G of the General Municipal Law. This became effective on January 1, 1958, the effective date of the constitutional amendment.
The implementing “ Bingo Licensing Law ” imposed certain restrictions upon the playing of bingo and made provision for its licensing, control and supervision.
The Executive Law was amended and a State Lottery Control Commission was created by article 19-B thereof. The purpose of the article is to implement section 9 of article I of the State Constitution. Section 431 of the Executive Law states that the purpose of the article is to carry out the mandate of said section 9 of article I of the Constitution and see that the games of chance (bingo) authorized by the Constitution are rigidly regulated to prevent undesirable practices.
It is common knowledge, and the court takes judicial notice of the fact, that in the year of 1958, a majority of the qualified electors of the City of Niagara Falls rejected and disapproved the playing of bingo in such city in accordance with the “ Bingo Licensing Law”, as contained in article 14-G of the General Municipal Law.
The defendant has been indicted by the September 1959 Niagara County Grand Jury and charged with the crime of “Unauthorized Conduct of Bingo Games in Violation of Arti *637 ele 14-G of the General Municipal Law of the State of New York”. The indictment spells out the violation in that the defendant unlawfully operated bingo games in the City of Niagara Falls on or about May 30, 1959, said defendant “ at the aforesaid time and place not being an authorized organization licensed under the provisions of Article 14G of the General Municipal Law of the State of New York ”.
The defendant demurred to the indictment. He contends the facts stated in the indictment do not constitute a crime.
The court conducted a hearing upon the argument of the demurrer. Memoranda have been compiled by the People and the defendant and submitted. The court has reviewed the constitutional amendment, the implementing statutes, and reviewed the two presently known opinions that relate to the subject of playing of bingo without a license.
One such opinion was rendered by Justice William E. McClusky in the case of Italian Community Home Federation v. Kelly (12 Misc 2d 33) decided in the Supreme Court in Onondaga County, July 7, 1958. The other opinion was rendered by Justice Howard A. Zeller in the case of Fedin v. Hanifin (22 Misc 2d 570) decided in the Supreme Court in Broome County, July 16,1959. Both of these opinions held that “ under the recent amendment to the State Constitution and the implementing statutes, no type of bingo may be conducted unless its operation is in conformity with the new legislation requiring local voter approval, licensing and control ’ ’. Both of these cases were for equitable relief, requesting temporary injunctions restraining police authorities from arresting officers of the plaintiff organizations which in each case were conducting what might be called “ free bingo ” or “ entertainment bingo ” which has been held not to constitute gambling; (People v. Burns, 304 N. Y. 380).
The demurrer must be allowed if the facts stated in the indictment do not constitute a crime. Defendant, in support of its argument for allowance of the demurrer, contends that article 14-G of the General Municipal Law, which is the law enacted by the State Legislature to implement the constitutional amendment, is ‘ ‘ utterly devoid of any clear and unequivocal expression of legislative intent to brand as criminal the conduct of ‘ free bingo ’ or ‘ entertainment bingo Defendant contends that the Legislature in the context of the legislation it enacted to carry out the mandate of the constitutional amendment, not once, but twice (General Municipal Law, § 478, subd. 2; § 496) specifically states that the legislation is inapplicable in communities which have not adopted the bingo referendum.
*638 Defendant further brought to the attention of the court that a bill was introduced in the 1958 session of the Legislature known as the Hatch Bill. By the terms of this bill, it would be a crime under the Penal Law to conduct what is commonly known as “ free bingo ” or “ entertainment bingo ”, This bill was considered but not passed. The defendant contends this is recognition by the Legislature that “ free bingo ” or “ entertainment bingo ” is not illegal; that the Legislature did not want to make it illegal, and that as such, it can be played without license, notwithstanding the adoption of article 14-G of the General Municipal Law, the ‘ ‘ Bingo Licensing Law ’ ’.
It is the contention of the defendant that while the Constitution and subsequent legislation can render legal that which was illegal theretofore, it cannot render illegal that which was legal before (“free bingo ” and “entertainment bingo”) without expressly spelling out its intention by proper legislation which shall be clear and unequivocal.
It is the court’s understanding that defendant’s position is that the provisions of the State Constitution, and this includes the so-called bingo amendment to the Constitution, are not self-executing, no matter how clear and expressive. Such constitutional provisions depend for their validity upon implementing legislation. If such implementing legislation is defective, which is the claim of the defendant here, or is less restrictive than the constitutional article, then, it is the contention of the defendant, that relief lies not in 1 ‘ judicial legislation ’ ’ but rather in the passage of more effective legislation, provided that is what the lawmakers want.
In support of this contention, defendant cited People ex rel. Sturgess v. Fallon (152 N. Y. 1), which was decided shortly after section 9 of article I of the Constitution was amended so as to provide for the creation of the State Racing Commission. The implementing legislation which accompanied the creation of the Racing Association was contained in chapters 570, 571 and 572 of the Laws of 1895. Prior thereto, book-making at a track was a crime punishable under the Penal Law. Chapter 570 of the Laws of 1895 provided that book-making, if conducted upon a race track authorized by the act, was not a crime punishable under the Penal Law. While it was not a crime under the Penal Law, the law adopted in the implementing legislation did give a remedy to a luckless wagerer which was a civil action against the gambler to recover the value of his bet.
In the People ex rel. Sturgess v. Fallon case (supra) the constitutionality of the implementing statute providing only a úvil remedy for gambling conducted on an authorized track was *639 questioned. The Constitution held then, as now, that bookmaking is unauthorized in the State. It was argued that the implementing legislation, providing only a weak or mild civil penalty, was contrary to the intent and purpose of the constitutional article which was more severe and restrictive, and that since the wording of the constitutional article was strong and forceful as compared with the weak language and provisions of the implementing legislation, it should prevail over it. The court in this instance held that the enabling legislation, even though its provisions for suppression of gambling were weak, was to be upheld and was not unconstitutional as contrary to the intent of the constitutional article. It was held that however weak the provisions of the implementing legislation may be as to penalties, such provisions were those adopted by the Legislature. The court did not indulge in legislating, reserving that function for the Legislature, feeling that if the Legislature found the enabling legislation too weak, it would have to remedy such condition by the passage of more effective legislation.
The defendant applies the reasoning and logic of the court in the Fallon ease to the instant case under consideration; that the Legislature has the power to pass legislation more effective than the present implementing legislation contained in the General Municipal Law which, the defendant claims, is weak and confusing in its wording, and that this court should not apologize for the shortcomings of the Legislature in this regard. Here, the defendant points out that the fact that the Legislature did not enact the Hatch Bill may be indicative of the fact that the Legislature intends that ‘ ‘ free bingo ” or “ entertainment bingo ” may be played, notwithstanding their passage of bingo control legislation.
The defendant also cited the case of Beach v. Queens County Jockey Club (164 Misc. 363, 365) which significantly refers to gambling at a race track. In this case, the court again refers to the weakness of the implementing legislation above referred to. The court refused to apologize for the weakness of the legislation and stated: ‘‘ This court is well aware that its function is to interpret the law and not to make it, and that in such interpretation, it must not by judicial legislation bring about a result which the legislators did not have in mind.”
The defendant further urges the point that the case under consideration does not involve an application for injunctive relief as in the previously referred to Italian Community Horn case and the case of Fedin v. Hanifin (supra), but the vali of an indictment charging a criminal offense.
*640 The defendant contends here in this instant case that the criminal offense charged in an indictment is spelled out by •implication. The defendant here contends that in the two cases above referred to, the court held there to be the possibility of a criminal offense by implication and that this is wrong. Justice MoClusky in the Italian Community Home case (12 Misc 2d 33, supra) stated: “The more reasonable view of the constitutional amendment and the implementing laws is that bingo is illegal in this State unless it conforms to the new legislation.” Justice Zeller in the Broome County Fedin case stated: “ A reading of the constitutional amendment and the ‘ Bingo Licensing Law ’ convinces me that the People of the State of New York and their Legislature firmly decided to control all bingo — ‘ free ’ or otherwise. Since the People of the State of New York and their Legislature saw fit, as a matter of public policy, to impose certain regulatory provisions upon the playing of all bingo, no bingo may be played in this State unless there has been compliance with the statute.”
To the defendant, in each of these two instances, it appears that the honorable Justices infer or imply that it is the intent of the Legislature to ban the playing of all bingo — “free”, “social”, “entertainment” or any other kind — except in compliance with the statute. The defendant contends that, if we are to give this interpretation to the law, then three or four couples playing “ social bingo ” in the privacy of the home of one of the couples, with no admission and no gambling stakes, would be subject to prosecution. There is a daily TV program called “Music Bingo”. This, the court presumes, would likewise be subject to prosecution. It is “ bingo ”.
The defendant maintains that section 496 of the General Municipal Law has no application to the situation of this case. Section 496 of the General Municipal Law reads as follows: “The provisions of this article [General Municipal Law, art. 14-G, the implementing legislation to the constitutional amendment] shall remain inoperative in any municipality unless and until a proposition therefor submitted at a general or special election in such municipality shall be approved by a vote of the majority of the qualified electors in such municipality voting thereon.”
It is the contention that since the City of Niagara Falls has not approved of the playing of bingo under the ‘ ‘ Bingo Licensing Law ’ ’ the provisions of article 14-G of the General Municipal T ~w are, as it says, “ inoperative ” as to said City of Niagara 11s.
*641 The District Attorney in his answering brief to that of the defendant makes an unusual concession in saying: “ Confusion exists as General Municipal Law Section 496 states that the provisions of Article 14-G shall remain inoperative in any municipality until there has been a referendum vote approving a bingo proposition.” (Emphasis is the court’s.)
Here, we have an admission by the District Attorney to the existence of confusion with regard to the application of the entire ‘ ‘ Bingo Licensing Law ’ ’ contained in article 14-G of the General Municipal Law to a community where there has not been a successful approving referendum vote.
The District Attorney, however, resolves this confusion easily in the same manner as the distinguished Justices in the Italian Community Home (supra) case and the Fedin (supra) case. The District Attorney states that in an examination of the constitutional amendment and the implementing legislation, we “ must consider the intent of the legislature and the citizens of this state
The District Attorney points out there are many authorities which relate the doctrine that legislative intent is the controlling principle in interpreting. any statute. He further points out that in the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered.
In People v. Fine (173 Misc. 1010) the District Attorney points out the statement of the court that “ The words of the Constitution, like those of any other law, must receive a reasonable interpretation, considering the object and purpose in mind.” The District Attorney then goes on and states that with regard to this matter under consideration: u It is the People’s position that the Constitutional Amendment and the implementing legislation show clearly that the legislative intent was to make the playing of bingo legal only when played in a community where there had been a referendum approving such bingo and while the playing was done as licensed and sanctioned under the General Municipal Law Article 14-G.”
The District Attorney, this court submits, is indulging in implication, as did the Justices in the two reported cases decided on the subject under consideration. None of them has pointed to clear, understandable, unequivocal language that expressly states that the playing of bingo or the conducting of bingo games — especially 6 6 free bingo” or “ entertainment bingo”, which has been held not to be a lottery — is legal only where played in a community that has approved of it by a referendum vote, nor have they pointed to clear, understandable and unequiv *642 ocal language expressly saying you or I cannot play “ social bingo ” or “ entertainment bingo ” without a license or the sanction of the State of New York.
This court is in complete agreement that, in a community which has approved of bingo under the ‘1 Bingo Licensing Law ’ ’ by a referendum vote, it can only be played in conformity with such “ Bingo Licensing Law ”. This has its merit in that communities that want bingo have the satisfaction of knowing that it will be licensed, controlled and played fairly and honestly and in accordance with the purposes of the “ Bingo Licensing Law”. For those that feel that the playing of bingo such as “ free bingo ”, “ entertainment bingo ” or even “ social bingo ” is a pernicious thing, it behooves them to urge their community to pass a bingo referendum so that they can license and control all bingo.
It seems reasonable and logical that in communities that are not interested sufficiently to conduct a bingo referendum, or where one has been held but defeated, the people therein should be free to play “social bingo”, “ free bingo” or “entertainment bingo ” as long as it is not a lottery — at least until they decide otherwise by their own vote.
This court is of the opinion that in communities where a favorable referendum has been conducted, a person who attempts to play or conduct a bingo game, not licensed, should be prosecuted for a violation of the General Municipal Law. Further, if it constitutes a lottery, there should, of course, be a criminal prosecution.
This court is of the further opinion that in a community where no bingo referendum has been held, or one has been held and a majority of the qualified electors votes that they did not want bingo played in the city under the conditions and provision of article 14-G of the General Municipal Law, the playing of bingo in such community is not, in and of itself, a violation of the provisions of the General Municipal Law. Of course, if the playing of the game is such that it constitutes a lottery, prosecution should be had as a criminal offense.
Not until the State Legislature states in clear, understandable and unequivocal language that it is its intent that no bingo should be played in the State of New York except under State control does this court feel that a citizen should be charged with a violation of the General Municipal Law because he conducts a bingo game in a community which has voted that it wants no part of bingo playing under State auspices. If such is the intent of the Legislature, two or three couples playing *643 the innocent and sociable game of bingo, not as gamblers, in the privacy of their homes, would be subject to prosecution for a violation of the General Municipal Law. An operator of a “ free bingo ” or “ entertainment bingo ” game, which has been held legal by the courts of this State, is guilty of a violation of the General Municipal Law. If these are the games that the State Lottery Control Commission wants to stamp out, it has the duty (Executive Law, § 439) to make recommendations to the Legislature that a bill such as the Hatch Bill (Senate No. 3853, Int. 3436, Feb. 25,1958) be passed or that the implementing legislation contained in article 14-G of the General Municipal Law be made more explicit.
Defendant has cited an ancient axiom of the common law that ‘ ‘ Hard cases make bad law ’ ’. This is a “ hard case ’ ’. However, this court does not want to “ legislate ” to correct a situation which can and should be corrected by proper legislation passed by the Legislature — if that is its wish. For this court to so ‘1 legislate ” is to make law the bad way. The Legislature has already done that. Let it correct its own mistakes.
For the foregoing reasons, it is the feeling of this court that the demurrer should be allowed, the indictment dismissed, and that the defendant’s bail be exonerated. Prepare and submit order of allowance.