William O. Hecht, Jr., J.
In this action to enjoin the State Attorney-General and the State Bingo Control Commission from interfering with the play and conduct by the plaintiff and its *424 licensees of a game called 1 ‘,Super-Bingo ”, both sides request summary judgment. The game is a supermarket promotional device and plaintiff alleges that it is the owner of the game and of trade-mark and copyright registration approved in the United States Patent Office. It is further alleged that if and when installations of the game are made in supermarkets, the participants need not be customers and will not pay a consideration for the play of the game. Plaintiff proposes to make installations in Syracuse and other parts of Onondaga County, Buffalo and its adjacent area, and New York City and its metropolitan area. However, the State authorities have expressed the opinion that any sponsor of “ Super-Bingo ” within the State of New York may be subject to prosecution under the provisions of sections 1387 and 1388 of the Penal Law.
The decisional and legislative history of the applicable statutory law is pertinent to the determination of these motions. In People v. Burns (304 N. Y. 380 [1952]), the Court of Appeals reversed a conviction for conducting an illegal lottery in violation of sections 1370 to 1373 of the Penal Law, on the ground that the record lacked proof that the participants in the game were ‘ ‘ persons who have paid * * * consideration for the chance ” so as to constitute a lottery within the meaning of section 1370 of the Penal Law. Thus, the game was held to be a lottery when played for stakes in which the player made a contribution.
Subsequently there was enacted a constitutional amendment and legislation adopted in implementation of such amendment, all effective January 1, 1958. Section 9 of article I of the New York State Constitution had provided that “ except as hereinafter provided, no lottery or the sale of lottery tickets * * * shall hereinafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section”. The constitutional amendment is what now constitutes subdivision 2 of section 9 of article I. In effect it authorized approval by appropriate vote in political subdivisions of the State of the conduct of specific games of chance known as ‘ ‘ bingo or lotto ’ ’ subject to certain restrictions. It concludes: “ Nothing in this section shall prevent the legislature from passing laws more restrictive than any of the provisions of this section.” Thereupon there were enacted article 19-B of the Executive Law (which, among other things, created the State Bingo Control Commission) and article 14-G (now art. 14-H) of the General Municipal Law entitled “Local Option for Conduct of Bingo by Certain Organizations.”
*425 Defendants cite two cases in support of their position that the “ game ” here involved may not be legally played in New York. In Italian Community Home Federation v. Kelly (12 Misc 2d 33) the Supreme Court, Onondaga County, held the playing of ‘‘ free ’ ’ bingo to be illegal and People v. Burns, cited (supra) to be inapplicable in view of the change in law occasioned by the constitutional amendment and implementing legislation. The General Municipal Law (§ 479) was deemed to now prohibit all bingo (whether or not it be for consideration) unless authorized by local option and in conformity with the regulatory statutes.
In Fedin v. Hanifin (22 Misc 2d 570) the Supreme Court, Broome County, agreed that by the constitutional amendment and the implementing statutes it was ‘‘ firmly decided to control all bingo — ‘free’ or otherwise *' * * [and] * * * no type of bingo may be conducted unless its operation is in conformity with the new legislation requiring local voter approval, licensing and control.”
Plaintiff relies on People v. Burns (23 Misc 2d 636) decided December 15, 1959. In that case, the County Court of Niagara County sustained a demurrer to an indictment charging defendant with the crime of “ Unauthorized Conduct of Bingo Games in Violation of Article 14-G of the General Municipal Law of the State of New York ”. The prosecution arose in the City of Niagara Falls where the electorate had disapproved the playing of bingo in accordance with the ‘ ‘ Bingo Licensing Law ’ ’. The court reviewed Italian Community Rome Federation v. Kelly (supra) and Fedin v. Hanifin (supra) and commented (p. 637): “ Both of these opinions held that ‘ under the recent amendment to the State Constitution and the implementing statutes, no type of bingo may be conducted unless its operation is in conformity with the new legislation requiring local voter approval, licensing and control ’. Both of these cases were for equitable relief, requesting temporary injunctions restraining police authorities from arresting officers of the plaintiff organizations which in each case were conducting what might be called ‘ free bingo ’ or ‘ entertainment bingo ’ which has been held not to constitute gambling (People v. Burns, 304 N. Y. 380).” The court noted that in the 1958 Session of the New York State Legislature, the proposed Hatch Bill was rejected. That bill would have declared it to be a crime under the Penal Law to conduct “ free bingo ” or “ entertainment bingo ”. The court inferred, therefore, that the conduct of free or entertainment bingo was not proscribed either by virtue of People v. Burns (304 N. Y. 380) or by virtue of the adoption of article 14-H *426 of the General Municipal Law or the rejection of bingo by community referendum.
The opinion concluded (pp. 641-643) that there was no language contained either in the constitutional amendment or in the implementing legislation:
“ That expressly states that the playing of bingo or the conducting of bingo games — especially ‘ free bingo ’ or ‘ entertainment bingo which has been held not to be a lottery — is legal only where played in a community that has approved of it by a referendum vote, nor have they pointed to clear, understandable and unequivocal language expressly saying you or I cannot play ‘ social bingo ’ or ‘ entertainment bingo ’ without a license or the sanction of the State of New York.
“In a community which has approved of bingo under the ‘ Bingo Licensing Law ’ by a referendum vote, it can only be played in conformity with such ‘ Bingo Licensing Law ’. This has its merit in that communities that want bingo have the satisfaction of knowing that it will be licensed, controlled and played fairly and honestly and in accordance with the purposes of the 1 Bingo Licensing Law \ For those that feel that the playing of bingo such as ‘ free bingo ’, ‘ entertainment bingo ’ or even ‘ social bingo ’ is a pernicious thing, it behooves them to urge their community to pass a bingo referendum so that they can license and control all bingo.
* * *
‘ ‘ This court is of the opinion that in communities where a favorable referendum has been conducted, a person who attempts to play or conduct a bingo game, not licensed, should be prosecuted for a violation of the General Municipal Law. Further, if it constitutes a lottery, there should, of course, be a criminal prosecution.
* * *
“ Not until the State Legislature states in clear, understandable and unequivocal language that it is its intent that no bingo should be played in the State of New York except under State control does this court feel that a citizen should be charged with a violation of the General Municipal Law because he conducts a bingo game in a community which has voted that it wants no part of bingo playing under State auspices. If such is the intent of the Legislature, two or three couples playing the innocent and sociable game of bingo, not as gamblers, in the privacy of their homes, would be subject to prosecution for a violation of the General Municipal Law. An operator of a ‘ free bingo ’ or ‘ entertainment bingo ’ game, which has been held legal by the courts of this State, is guilty of a violation of the *427 General Municipal Law. If these are the games that the State Lottery Control Commission wants to stamp out, it has the duty (Executive Law, § 439) to make recommendations to the Legislature that a bill such as the Hatch Bill (Senate No. 3853, Int. 3436, Feb. 25, 1958) be passed or that the implementing legislation contained in article 14-G of the General Municipal Law be made more explicit. ’ ’
This interpretation would not seem inconsistent with the express language in section 496 of the General Municipal Law: “ The provisions of this article shall remain inoperative in any municipality unless and until a proposition therefor submitted at a general or special election in such municipality shall be approved by a vote of the majority of the qualified electors in such municipality voting thereon.” (Italics supplied.)
Subsequent to this 1959 Niagara County decision, the Legislature enacted Penal Law sections 1387 and 1388, both sections becoming effective April 12,1960 (L. 1960, eh. 533). Section 1387 defines “Bingo” as “ a specific game of chance * * * in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random.” The definition clearly embraces the game of “Super-Bingo” as it is described in the pleadings. Section 1388 makes it a misdemeanor to operate or conduct bingo unless authorized and “ duly licensed under the provisions of article fourteen-h of the General Municipal Law ”. The statute, in its second paragraph provides: “ This section shall apply to all municipalities within this state, including those municipalities where article fourteen-h of the general municipal law is inoperative ”. (Italics supplied.)
If there were circumstances under which the provisions of the licensing law were to be deemed inoperative by virtue of section 496 of the General Municipal Law (as in People v. Burns, supra) then the confusion engendered by that section was eliminated and the Legislature’s intent made abundantly clear by the subsequent enactment of section 1388 of the Penal Law. The operation of any game of bingo without authority and license under article 14-H is in violation of law.
This conclusion is supported by the Second Annual Report of the State Lottery Control Commission for the period April 1, 1959 to March 31, 1960. That report, in pertinent part, provides (pp. 12-13):
‘ ‘ The result of this decision [People v. Burns, 23 Misc 2d 636, supra] was an invitation to all professional bingo operators and organizations to operate in municipalities which had not adopted a local law or ordinance legalizing bingo. The full *428 import of the decision was that bingo could be conducted in these municipalities as it had been prior to January 1, 1958, which meant no regulation; the field was open to anyone; there was no limitation of the prize money; no limitation on the admission charge; no provision that workers could not be paid; anyone could work at the games, whether of good moral character or not, whether a criminal or not; that the games could be advertised; that children could play; that alcohol could be awarded as prizes and sold and in general all the safeguards afforded by the Constitution, the Bingo Licensing Law and the rules and regulations removed. The Commission immediately prepared legislation to cover the alleged loophole, and two new Sections 1387 and 1388 were added to the Penal Law on April 12,1960. Section 1388 makes it a misdemeanor for any person, firm, association, corporation or organization, other than an authorized organization as defined in the general municipal law, to hold or conduct bingo. This law applies to all municipalities of the State including those which have not adopted a local law or ordinance legalizing bingo.
“ Therefore, the door to the operation of bingo has been closed to all unauthorized organizations and persons, and the position taken by the Commission is now clear, namely, that bingo can only be played in municipalities which have adopted a local law or ordinance legalizing it and then only by duly licensed authorized organizations.”
Defendants may not be enjoined from taking appropriate action in enforcement of any laws applicable to the instant situation. Accordingly defendants’ motion for summary judgment is granted and plaintiff’s motion is denied.