Hon. Richard F. Corbisiero Chairman New York State Racing and Wagering Board
Your Director of Wagering Systems has asked whether two proposed television programs are subject to the Bingo Licensing Law (General Municipal Law, §§ 475-499). The particular question raised is whether use of the word "bingo" in the titles of these games brings the games within the regulatory purview of the Bingo Licensing Law.
By way of background, Article I, section 9 of the New York Constitution, with specified exceptions, prohibits all forms of gambling. As originally enacted, the Constitution of 1894 banned any and all forms of gambling. Exceptions have been made by constitutional amendment to allow for pari-mutuel betting on horse racing (1939); to allow for bingo or similar games of chance to raise funds for eleemosynary groups (1957); to allow for the establishment of the State lottery (1965); and to expand the special exception granted eleemosynary groups (1975). Recent opinions of this office have concluded that any expansion of legalized gambling in New York must be done by constitutional amendment (Op Atty Gen No. 85-F8 [electronic bingo]; Op Atty Gen No. 85-12 [video games simulating various methods of gambling]; 1984 Op Atty Gen 11 [proposed sports betting lottery]; 1981 Op Atty Gen 68 [proposed computer gambling lottery]).
The proposals included with your request describe television shows which utilize aspects of the traditional bingo game in combination with other word-puzzle type games typical of television game shows. In one proposal ("Bingo USA"), participants in the game compete against each other to solve word puzzles. By doing so, they earn chances to win prizes in the "bingo board" segment of the game. The bingo board is a large reproduction of the traditional bingo card. The boxes which the board is divided into contain the names of various prizes the participants can win (e.g., "radio", "piano", "washer", "dryer"), in lieu of the numbers found on a traditional bingo card. The player who is successful in the word puzzle segment of the game has a number of turns at the bingo board. While a light moves randomly among the prizes on the board, the player yells "bingo", which causes the light to stop on a particular prize. In order to be successful, the player must light five squares in a row, either vertically, horizontally or diagonally (as in traditional bingo the center square is a free space). The player then receives those prizes in the row or column he or she completed. At the same time this in-studio action occurs, viewers at home can participate in the game. Viewers can obtain "home-player cards" for no cost at various places and play along at home. Home play is described in the proposal in the following way:
 "If play proceeds long enough, or if the star is landed upon, the strong possibility exists that a double bingo could occur. This would give the in-studio player more prizes. This would also give the home viewers a bonus, because it is at the [game's completion] that the home viewers are instructed to cover, on their cards at home, the spaces which contain the same prizes won by our in-studio player. If the prizes covered by the home player cover a complete line diagonally, vertically, or horizontally, that home player is a winner, and shares in the weekly $500,000 home jackpot."
A second proposal ("All American Bingo") included with your request also involves use of the word bingo in its title and in the course of play. In this second proposal, the participants solve word puzzles which determine how many numbered balls they will select from a hopper. As in traditional bingo, the players are given a "card" which consists of a grid filled with numbers. The play then proceeds much the same way as in traditional bingo: selecting the numbered balls from the hopper, the player must fill in five boxes in a row, either vertically, horizontally or diagonally in order to win. This proposal does not involve any home participation by the viewers.
Although these proposals use the word bingo in their titles, and presumably will make reference to bingo in their promotional activities, you have informed us that they do not constitute bingo as that term is defined under State law (Executive Law, § 432[3]; General Municipal Law, § 476[3]).* The question is whether this activity, although not constituting bingo, is subject to State regulation under the Bingo Licensing Law because of the use of the word bingo.**
Earlier opinions dealt with an issue which could be described as the inverse of your question: whether a game, which is essentially bingo, is subject to the Bingo Licensing Laws if it uses another name (e.g., "Darto", "Skilo" or "Gamerama"). We concluded that if the game falls within the statutory definition of bingo it is subject to regulation, regardless of what it is called (1977 Op Atty Gen 18; 1963 Op Atty Gen 51).
Preliminarily, we note that neither the Constitution, the Bingo Licensing Law nor the Bingo Control Law (Executive Law, § 430, et seq.), explicitly restricts use of the word bingo or make use of the word bingo subject to regulation by the Bingo Control Commission. The purpose of the Bingo Control Law, however, is set forth in section 431 of the Executive Law:
 "[The legislature] hereby finds that, as conducted prior to the enactment of this article, bingo was the subject of exploitation by professional gamblers, promoters, and commercial interests. It is hereby declared to be the policy of the legislature that all phases of the supervision, licensing and the regulation of bingo and of the conduct of bingo games, should be closely controlled and that the laws and regulations pertaining thereto should be strictly construed and rigidly enforced; that the conduct of the game and all attendant activities should be so regulated and adequate controls so instituted as to discourage commercialization in all its forms . . ." (Executive Law, § 431).
The breadth of this regulation has been recognized by the courts, most significantly in Feidin v Hanifin, 22 Misc.2d 570 (Sup Ct, Broome Co, 1959), where the court found that the Legislature "firmly decided to control all bingo — `free' or otherwise . . . [and] . . . no type of bingo may be conducted unless its operation is in conformity with the new legislation . . ." (id., at 572; see also, Kayden Industries, Inc. vLefkowitz, 46 Misc.2d 423 [Sup Ct, N Y Co, 1965]).
Recognizing that a valid public purpose is served by the regulation of bingo and bingo-type gambling, we nevertheless conclude that the mere use of the word "bingo" does not make a television game show subject to the Bingo Licensing Law. In addition to the First Amendment and Commerce Clause (US Const, Art I, § 8, cl 3) problems such a broad restriction would create, regulation of the word "bingo" does not appear to be the purpose of the Bingo Licensing Law. Section 430 of the Executive Law seeks to regulate "all phases of the supervision, licensing and the regulation of bingo and of the conduct of bingo games", in order to avoid "exploitation by professional gamblers, promoters and commercial interests" (ibid.). Restrictions on use of the word bingo, standing alone, would not necessarily serve these purposes. The word "bingo" is used today in so many contexts besides that of gambling and games of chance that such a regulation would be overboard and would not serve the purposes of the Bingo Licensing Law.
When use of the word "bingo" is accompanied by some activity which creates a danger of confusion with licensed bingo, the situation is different. Your specific question is whether the Board can regulate games which resemble bingo and are called "bingo". We would apply the following standard: if the games resemble bingo to such a degree that they create the impression that they are validly licensed bingo games, or to create genuine confusion as to their nature, then the Board may regulate them.
Furthermore, we note that the Board's regulatory mandate is sufficiently broad to enable it to regulate this activity even though it does not fall within the strict definition of bingo under the General Municipal and Executive Laws. Section 495-a of the General Municipal Law provides an alternate definition of bingo and shows that the Board's mandate includes authority to regulate activities which resemble, but do not strictly meet the definition of bingo:
 "For the purposes of this section, `bingo' or `game' shall mean and include a specific game [of] chance, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random, whether or not a person who participates as a player furnishes something of value for the opportunity to participate" (General Municipal Law, § 495-a; emphasis added).
Turning to the two proposals in your letter, it appears to us that the crucial element which would create confusion as to whether a show involves State-approved bingo activity, is viewer participation. If the home viewer only watches the game, no matter how closely it resembles bingo, without participation we feel there is little chance of confusion. The participation and actual opportunity to win prizes is central to the whole concept of bingo. Without such participation, we feel that there is little danger of viewers confusing it with State-sanctioned bingo or other gambling activity. A game show that uses the word "bingo" in its title, yet involves no viewer participation would not properly be subject to regulation by the Board.
On the other hand a person who participates in a game called "bingo" that involves his or her active participation in a style not unlike that of traditional bingo, may very well believe he is participating in State-sanctioned bingo. Each factual situation will differ, of course, and the Board ultimately has the authority to determine which activity will be subject to its authority. We offer this analysis only as an attempt to create some guidelines for the exercise of that authority.
We conclude that use of the word "bingo" by a television game show broadcast into New York State does not in and of itself bring that show within the purview of the Bingo Licensing Law. If, however, use of the word "bingo" is accompanied by a bingo-type game which involves participation by home viewers, the activity may create the impression that the home participant is playing State-sanctioned bingo, which would bring the activity within the purview of the State regulation.
* Both the Executive Law and General Municipal Law define bingo in the following way:
 "`Bingo' or `game' shall mean a specific game of chance, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random" (Executive Law, § 432[3]; General Municipal Law, § 476[3]).
** You have informed us that for various reasons, the inquiries received by the Board regarding these proposals have been withdrawn, rendering moot any questions as to the propriety of these particular proposals. Nevertheless, you have asked us to address the issues raised for guidance in the event they reoccur.